**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALTANA CREDIT OPPORTUNITIES FUND SPC, ALTANA CREDIT OPPORTUNITIES FUND 1 SP, and ALTANA FUNDS LTD. CAYMAN,<br><br>Plaintiffs,<br><br>v.<br><br>THE BOLIVARIAN REPUBLIC OF VENEZUELA.<br><br>Defendant. | Case No. 1:20 Civ. 8402-AT |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO VACATE THE DEFAULT JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)**

GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
Tel: (212) 801-9200

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 3

ARGUMENT ........ 6

I. EXTRAORDINARY CIRCUMSTANCES WARRANT GRANTING THE REPUBLIC RELIEF UNDER RULE 60(b)(6). ........ 6

A. The Republic's Default Was Not Willful. ........ 8

1. The Real Government Was Barred from Defending This Action. ........ 8
2. Service Was Directed Only to the Sham Guaidó Group, Not the Real Government of Venezuela. ........ 11
3. Upon Regaining Capacity and Recognition, the Republic Has Moved Promptly and in Good Faith. ........ 11

B. The Republic Has Meritorious Defenses. ........ 12
C. Vacating the Judgment Will Not Prejudice Plaintiffs. ........ 19
D. The Republic's Motion is Timely. ........ 21

II. THE DEFAULT JUDGMENT ALSO IS VOID UNDER RULE 60(b)(4) BECAUSE SERVICE DID NOT COMPLY WITH THE FSIA. ........ 22
III. THE COURT SHOULD STAY ENFORCEMENT PENDING RESOLUTION OF THIS MOTION. ........ 24

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*American Alliance Ins. Co. v. Eagle Ins. Co.*
92 F.3d 57 (2d Cir. 1996) ....................7, 9, 12

*Arpesella et al v. Bolivarian Republic of Venezuela*,
No. 23-cv-08929 (S.D.N.Y.)....................12

*BLOM Bank SAL v. Honickman*,
605 U.S. 204 (2025)....................7, 8

*Casa Express Corp. v. Bolivarian Republic of Venezuela*,
492 F. Supp. 3d 222 (S.D.N.Y. 2020)....................10, 14

*Cavara et al v. Bolivarian Republic of Venezuela*,
No. 25-cv-00165 (S.D.N.Y.)....................12

*Chickpen*, *S.A. v. Bolivarian Republic of Venezuela*,
No. 21-cv-00597 (S.D.N.Y.)....................12

*CITGO Petro. Corp. v. Ascot Underwriting Ltd.*,
158 F.4th 368 (2d Cir. 2025) ....................9

*Commercial Bank of Kuwait v. Rafidain Bank*,
15 F.3d 238 (2d Cir. 1994)....................7, 17

*Contrarian Cap. Management LLC v. Bolivarian Republic of Venezuela*,
No. 19-cv-11018 (S.D.N.Y.)....................12

*Covington Indus., Inc. v. Resintex A.G.*,
629 F.2d 730 (2d Cir. 1980)....................22

*Davis v. Musler*,
713 F.2d 907 (2d Cir. 1983)....................19

*Drywall Tapers & Pointers of Greater N.Y. Local Union 1974, IUPAT, AFL-CIO v. Creative Installations, Inc.*,
343 F.R.D. 358 (S.D.N.Y. 2022) ....................11

*Enron Oil Corp. v. Diakuhara*,
10 F.3d 90 (2d Cir. 1993) ....................7, 13, 14, 20, 21

*FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*,
447 F.3d 835 (D.C. Cir. 2006)....................10

*First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda–Permanent Mission*,
877 F.2d 189 (2d Cir. 1989)....................7

*Flores v. El Bukanitas Inc.*,
No. 22-cv-6751, 2025 WL 3460744 (E.D.N.Y. Aug. 8, 2025) ....................11

*Fontana v. Republic of Argentina*,
415 F.3d 238 (2d Cir. 2005)....................14

*G&A Strategic Invs. I LLC v. Petróleos de Venezuela, S.A*,
No. 23-cv-10766, 2024 WL 4520067 (S.D.N.Y. Oct. 17, 2024)............2, 7, 11, 13, 20, 22, 23

*Guaranty Trust Co. of New York v. United States*,
304 U.S. 126 (1938)....................9, 10

*Harmon Kardon, Inc. v. Ashley Hi-Fi*,
602 F.2d 21 (1st Cir. 1979)....................25

*Hill v. Republic of Iraq*,
328 F.3d 680 (D.C. Cir. 2003)....................18

*Irvin v. Harris*,
944 F.3d 63 (2d Cir. 2019)....................22

*Knox v. Bank of N.Y.*,
508 F. Supp. 2d 249 (S.D.N.Y. 2007)....................24

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)....................25

*Lovati et al v. Bolivarian Republic of Venezuela*,
No. 19-cv-04796 (S.D.N.Y.)....................12

*Lovati, et al v. Bolivarian Republic of Venezuela*,
No. 19-cv-04793 (S.D.N.Y.)....................12

*Mazzaccone v. The Bolivarian Republic of Venezuela*,
No. 24-cv-06168 (S.D.N.Y.)....................12

*Mazzaccone v. The Bolivarian Republic of Venezuela*,
No. 24-cv-9114 (S.D.N.Y.)....................12

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
863 F.3d 96 (2d Cir. 2017)....................22, 24

*Neuhauser v. Bolivarian Republic of Venezuela*,
No. 20-cv-10342, 2023 WL 4350614 (S.D.N.Y. July 3, 2023)....................12, 17, 22

*New York v. Green*,
420 F.3d 99 (2d Cir. 2005)....................7, 8, 20, 21, 22

*Nken v. Holder*,
556 U.S. 418 (2009)....................25

*In re Orion HealthCorp, Inc.*,
95 F.4th 98 (2d Cir. 2024)....................8

*Paraticuara LTD v. The Bolivarian Republic of Venezuela*,
No. 24-cv-007738 (S.D.N.Y.)....................12

*Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*,
No. 19-CV-10023-KPF (S.D.N.Y. Aug. 29, 2025)....................4

*Pharo Gaia Fund, Ltd. v. Bolivarian Republic of Venezuela*,
No. 20-cv-8497, 2025 WL 1268864 (S.D.N.Y. May 1, 2025) ....20

*Pharo Gaia Fund, Ltd. v. Bolivarian Republic of Venezuela*,
No. 19-cv-3123, 2025 WL 1284787 (S.D.N.Y. May 1, 2025) ....21

*PRC Harris, Inc. v. Boeing Co.*,
700 F.2d 894 (2d Cir. 1983)....21

*Republic of Iraq v. ABB AG*,
768 F.3d 145 (2d Cir. 2014)....10

*Republic of Panama v. Air Panama Internacional, S.A.*,
745 F. Supp. 669 (S.D. Fla. 1988) ....8, 9

*Republic of Sudan v. Harrison*,
587 U.S. 1 (2019)....22, 23

*Republic of Vietnam* v. *Pfizer, Inc.*,
556 F.2d 892 (8th Cir. 1977) ....8

*S.E.C. v. McNulty*,
137 F.3d 732 (2d Cir. 1998)....8, 9, 12

*Schafrann v. Republic of Venezuela*,
No. 01-cv-10637, 2002 WL 1766446 (S.D.N.Y. July 31, 2002)....17

*Shapiro v. Republic of Bolivia*,
930 F.2d 1013 (2d Cir. 1991)....22

*Socialist Republic of Romania v. Wildenstein & Co.*,
147 F.R.D. 62 (S.D.N.Y. 1993) ....10

*Sony Corp. v. ELM State Elecs., Inc.*,
800 F.2d 317 (2d Cir. 1986)....7

*Stansell v. Revolutionary Armed Forces of Colombia (FARC)*,
No. 16 Misc. 405 (S.D.N.Y. Mar. 11, 2026) ....6, 21

*Syracuse Mountains Corp. v. Petróleos de Venezuela S.A.*,
No. 21-cv-2684, 2024 WL 3637997 (S.D.N.Y. August 1, 2024)....14

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
30 F.3d 148 (D.C. Cir. 1994) ....22, 23

*Estate of Ungar v. Palestinian Auth.*,
344 F. App'x 631 (2d Cir. 2009) ....24

*Venezuela US SRL v. Bolivarian Republic of Venezuela*,
178 F.4th 679 (D.C. Cir. 2026)....10

*VGB Limited v. Bolivarian Republic of Venezuela*,
No. 23-cv-09933 (S.D.N.Y.)....12

*Weisel v. Pischel*,
197 F.R.D. 231 (E.D.N.Y. 2000) ....12

*Wildflower + Co. v. Mood Apparel, Ltd.*,
338 F.R.D. 192 (S.D.N.Y. 2021) ....................12

*Zahn v. Bolivarian Republic of Venezuela*,
No. 24-cv-9271, 2026 WL 2185589 (S.D.N.Y. July 29, 2026)....................12, 13, 14

**State Cases**

*Altamira Investments v. The Bolivarian Republic of Venezuela*,
No. 655341/2023 (N.Y. Sup. Ct.) ....................12

*Brettler v. Allianz Life Ins. Co.*,
40 N.Y.3d 450, 226 N.E.3d 885 (2023)....................17

*Copernico Recovery Fund v. Petroleos De Venezuela, SA*,
No. 656172/2023 (N.Y. Sup. Ct.) ....................12

*Justinian Cap. SPC v. WestLB AG*,
28 N.Y.3d 160, 65 N.E.3d 1253 (2016)....................13, 14

**Foreign Cases**

*IlliquidX Ltd. v. Altana Wealth*,
[2026] EWCA Civ 874 (E.W.C.A. 2026)....................3, 14

**Federal Statutes**

28 U.S.C. § 1330(b) ....................17, 22, 23, 24

28 U.S.C. §§ 1602–1611....................22, 24

28 U.S.C. § 1608....................22, 24

28 U.S.C. § 1608(a) ....................22, 23

28 U.S.C. § 1608(a)(2)....................11, 23

28 U.S.C. § 1608(a)(3)....................11, 23

28 U.S.C. § 1608(a)(4)....................5, 22, 23

28 U.S.C. § 1608(b) ....................23

28 U.S.C. § 1608(e) ....................5, 16, 17

**State Statutes**

N.Y. Jud. Law. § 489(1) ....................13

**Rules**

Fed. R. Civ. P. 4....................24

Fed. R. Civ. P. 4(j)(1) ....................24

Fed. R. Civ. P. 5(a)(2)....................23

Fed. R. Civ. P. 41(a)(2)....................21
Fed. R. Civ. P. 60(b)....................6, 19, 20, 21, 24, 25
Fed. R. Civ. P. 60(b)(4)....................1, 2, 22, 23
Fed. R. Civ. P. 60(b)(6)....................1, 2, 6, 7, 8, 9, 10, 22
Fed. R. Civ. P. 60(c)(1)....................21

**Regulations**

31 C.F.R. § 591.312....................18
84 Fed. Reg. 38,843 (Aug. 7, 2019)....................10
87 Fed. Reg. 62001 (Oct. 13, 2022)....................18
87 Fed. Reg. 62007 (Oct. 13, 2022)....................18

Defendant the Bolivarian Republic of Venezuela (the "Republic") respectfully submits this memorandum of law in support of its motion, pursuant to Federal Rules of Civil Procedure 60(b)(4) and 60(b)(6), to vacate the Default Judgment entered against it on July 19, 2023 (ECF No. 76), as amended on November 16, 2023 (ECF No. 93).

## PRELIMINARY STATEMENT

Given the highly unusual circumstances of this case involving changes to diplomatic recognition of a sovereign government, clear "reasons" exist under Rule 60(b)(6) to "justify relief" in the form of vacating the roughly $600 million default judgment against the Republic. That relief is supported by the strong federal policy favoring adjudication on the merits. The equitable standards for relief under Rule 60(b)(6), which are to be applied liberally where a default judgment is entered against a sovereign state, are squarely met.

*First*, the Republic's default was not willful. It did not ignore this litigation as a matter of choice. From 2013 until January 2026, Nicolás Maduro led the Republic's government in Caracas. However, by the time Plaintiffs filed suit in 2020 and obtained a default judgment in 2023, the United States had recognized a sham, parallel group as the country's government instead of the authorities that operated Venezuela's ministries, files, and legal apparatus. Thus, the entity with capacity to defend this action was prevented from doing so. A default compelled by internal U.S. politics and policy is not the "egregious" or "deliberate" conduct that Rule 60(b)(6)'s willfulness inquiry targets. Following the recent U.S. recognition of the current Caracas-based government, the Republic has moved promptly to defend numerous American lawsuits, including this action. Indeed, this is the first time in nearly seven years that the actual government of Venezuela has an opportunity to appear in U.S. courts to defend itself.

*Second*, the Republic has legitimate defenses to assert in this case. Publicly known facts support a champerty defense and lack of authorization to sue on at least certain bond series upon

which judgment was entered. The default judgment also rests on Plaintiffs' untested affidavits, and the Republic should be permitted discovery as to whether Plaintiffs are eligible for relief due to possible violations of sanctions imposed by the U.S. Office of Foreign Assets Control ("OFAC") and whether they have complied with contractual requirements for the transfer and acquisition of their alleged beneficial bond interests.

*Third*, vacatur will not prejudice Plaintiffs, who can make no showing that vacatur will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud. Mere delay does not suffice but, in any event, there is no genuine delay to any recovery here, where the Plaintiffs have been unable to collect on a default judgment entered three years ago because of various regulatory and practical financial obstacles to collection that continue to exist.

Instructively, in *G&A Strategic Invs. I LLC v. Petróleos de Venezuela, S.A*, 2024 WL 4520067 (S.D.N.Y. Oct. 17, 2024), a court of this District recently vacated more than $1.8 billion in default judgments against a Venezuelan state-owned entity under Rule 60(b)(6), finding "extraordinary circumstances" on key facts present here: staggering sums, a race among global creditors against a sovereign state with limited assets, no willful default, a colorable defense, and no prejudice. Because similar circumstances exist in this case, this $600 million dispute likewise should be decided on its merits.

In addition to equitable grounds of Rule 60(b)(6), the default judgment also warrants vacatur under Rule 60(b)(4) because Plaintiffs' service efforts did not comply with the Foreign Sovereign Immunities Act ("FSIA"). Pending resolution of this motion, the Court should exercise its discretion to stay the enforcement of the judgment.

## STATEMENT OF FACTS

**The Bonds.** This is a breach-of-contract action to recover unpaid principal and interest on fourteen series of bonds issued by the Republic in 1997, 1998, and 2001 under certain fiscal agency agreements (the "FAAs") governed by New York law. (ECF No. 72 at 1–2.) Plaintiffs Altana Credit Opportunities Fund SPC and Altana Credit Opportunities Fund 1 SP claim to be beneficial owners of the bonds, and Altana Funds Ltd. Cayman sues as their investment adviser, conceding that it does not itself hold the bonds. (ECF No. 72 at 1.)

**The Plaintiffs**. The Altana Credit Opportunities Fund ("ACOF") is a Cayman-domiciled, Venezuela-only distressed-debt fund launched in July 2020. ACOF is held through two Cayman entities: the Plaintiffs ACOF SPC and ACOF 1 SP, with Plaintiff Altana Funds Ltd. Cayman acting as investment adviser/manager. (*See* ECF No. 1 ¶¶ 1, 6-10; ECF No. 66, at 2 n.3.) All the Venezuelan debt acquired by ACOF was years in default prior to the Fund's July 2020 launch. Plaintiffs filed this action on October 8, 2020, within months of the Fund's formation. (ECF No. 1.) The Fund's investment strategy includes litigation, stating in private placement materials that "[c]redit instruments will likely require the Segregated Portfolio to file claims in New York courts on behalf of the investors as stipulated under bond indentures."[1]

Notably, Altana appears to have had an idea for this litigation-focused pooling of Venezuelan bonds that duplicated that of IlliquidX, a U.K.-based investment advisor behind at least one other U.S. litigation against the Republic.[2]

---

1 Altana Credit Opportunities Fund SPC, *Confidential Private Placement Memorandum Supplement* (July 2020), 14 https://s3.amazonaws.com/cdn.altanawealth.com/public/SubscriptionDocs/ACOF/Supplement+-+Altana+SP+-+July+2020.pdf (last visited Sept. 28, 2026).

2 *IlliquidX Ltd. v. Altana Wealth*, [2026] EWCA Civ 874, [38]-[40], [68], [78]-[80] (appeal taken from Eng.), https://www.iclr.co.uk/document/2026006109/2026ewcaciv874_TNA/html (last visited Sept. 30, 2026).

**Pre-Default Judgment U.S. Diplomacy Decisions**. Hugo Chávez was the Republic's head of state until his death in 2013, when Nicolás Maduro succeeded him. On January 23, 2019, the U.S. ceased to recognize President Maduro as Venezuela's head of state and instead recognized Juan Guaidó, the head of the so-called National Assembly, as the "interim" head of state.[3]

Thus, when Plaintiffs filed suit on October 8, 2020, the United States did not recognize the real government of Venezuela, and instead recognized a sham, parallel group purporting to be led by Juan Guaidó. in early January 2023, the Biden administration accepted the dissolution of Guaidó's so-called interim government and shifted its recognition to the so-called National Assembly.[4]

**Service and Default.** The only pleading ever supposedly served on Guaidó was the Second Amended Complaint ("SAC"). (ECF No. 39 at 1.) No pleading was ever served on the real Venezuelan government. Notwithstanding, the Clerk entered a certificate of default on September 21, 2021. ECF No. 37. Plaintiffs then amended repeatedly. The Third Amended Complaint "add[ed] one additional breach-of-contract count on one bond." (ECF No. 40 at 3.) Plaintiffs subsequently filed a Fourth (ECF No. 51), Fifth (ECF No. 59), and finally the operative Sixth Amended Complaint, asserting thirteen counts against the Republic covering fourteen bond series. (ECF No. 62, ¶¶ 36-105.) Plaintiffs did not serve the Republic with any of its amended complaints.

---

[3] Press Release, The White House, *Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaidó as the Interim President of Venezuela* (Jan. 23, 2019), https://trumpwhitehouse.archives.gov/briefings-statements/statement-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-interim-president-venezuela/ (last visited Sept. 28, 2026); *see* U.S. Statement of Interest, *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, No. 1:19-CV-10023-KPF, (S.D.N.Y. Aug. 29, 2025), ECF No. 393, Ex. A at 2.

[4] Press Statement, Ned Price, Spokesperson, U.S. Dep't of State, *Venezuela's Interim Government and the 2015 National Assembly* (Jan. 3, 2023), https://2021-2025.state.gov/venezuelas-interim-government-and-the-2015-national-assembly/ (last visited Sept. 28, 2026).

(ECF No. 61 at 1; ECF No. 72 at 3.) Each time, the Court excused re-service on the ground that the Republic "was served with the Second Amended Complaint and is in default." (ECF No. 58 at 1; ECF No. 61 at 1.)

Because the Republic had closed its Consulate General and, according to Plaintiffs, other statutory methods allegedly were unavailable, Plaintiffs supposedly served the Republic under 28 U.S.C. § 1608(a)(4), having the Clerk transmit the papers to the U.S. Department of State, which delivered them to the Venezuelan embassy in Washington, D.C. (ECF No. 13 at 3–4; ECF No. 25 at 1; ECF No. 72 at 4.) But that embassy and Venezuela's diplomatic apparatus in the U.S. were not controlled by the real Venezuelan government. (El País Article, at 3.) The Republic is unaware of whether the sham Guaidó group ever received actual notice (and if it did, the Republic is unaware of why it failed to appear).

**Entry of the Default Judgment.** On July 5, 2023, when the U.S. government no longer recognized Guaidó, the Court granted Plaintiffs' motion for a default judgment. (ECF No. 72 at 1.) Applying 28 U.S.C. § 1608(e), the Court found Plaintiffs' contractual standing and authorization from the record holders established on the declaration of Plaintiffs' counsel and accompanying exhibits. (ECF No. 72 at 5.) On July 19, 2023, the Court entered a default judgment as to all fourteen bond series. (ECF No. 76 at 1.) On November 16, 2023, the Court entered an Amended Default Judgment adding $394,080.63 in attorneys' fees and costs. (ECF No. 93 at 9.) The total judgment is $589,413,443.82, exclusive of the later fee award. (ECF No. 91 at 1.)

**Enforcement.** On December 7, 2023, the Court permitted Plaintiffs to pursue attachment and execution against the Republic's U.S. property. (ECF No. 91 at 1–2.) Plaintiffs have since pursued collection, registering the judgment in connection with the Delaware sale of shares of

PDV Holding, Inc., CITGO's parent (*see* ECF No. 90, at 2–3), and most recently, issuing a subpoena to a third-party bank. (ECF No. 98 at 1.)

**Post-Default Judgment U.S. Diplomacy Decisions.** In January 2026, President Maduro was apprehended. Acting President Delcy Rodríguez assumed office and in March 2026 obtained U.S. recognition as the legitimate government of Venezuela. *See* Statement of Interest of the United States, *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, No. 16 Misc. 405 (S.D.N.Y. Mar. 11, 2026), ECF No. 621, at 1.

The Republic immediately started to identify potential U.S. counsel to represent it in dozens of U.S. lawsuits. This process was further inhibited by the twin earthquakes taking place in late June 2026 that created a humanitarian crisis prompting the Rodríguez government to issue a state of emergency.[5] The process of retaining counsel was ongoing in late July 2026. *VGB Limited v. Bolivarian Republic of Venezuela*, No. 1:23-cv-09933-AT (S.D.N.Y. July 22, 2026), ECF No. 40, at 1. The current government has thus promptly moved to defend Venezuela's interests in U.S. litigation. With specific regard to this matter, with the recognition of the U.S. Executive Branch allowing it to appear and defend against Plaintiffs' claims, the Republic swiftly retained new counsel who now move to vacate.

## ARGUMENT

### I. EXTRAORDINARY CIRCUMSTANCES WARRANT GRANTING THE REPUBLIC RELIEF UNDER RULE 60(b)(6).

Rule 60(b)(6) authorizes relief for "any other reason that justifies relief" beyond those otherwise set forth in Rule 60(b), and its equitably flexible reach applies to the types of

[5] Elizabeth Melimopoulos, *Venezuela Rocked by 7.5, 7.2 Earthquakes: What Happened and What We Know*, Al Jazeera (June 25, 2026), https://www.aljazeera.com/news/2026/6/25/venezuela-rocked-by-7-5-7-2-earthquakes-what-happened-and-what-we-know (last visited Sept. 28, 2026).

"extraordinary circumstances" present here. *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210 (2025). In deciding a motion to vacate a default judgment pursuant to Rule 60(b)(6), "courts generally examine three criteria to determine whether to vacate a judgment: (1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996) (citations omitted) (vacating default). Those factors are considered in light of the Second Circuit's "strong preference for resolving disputes on the merits," and the Court's acknowledgment that a default judgment is "the most severe sanction which the court may apply," and considering that "all doubts must be resolved in favor of the party seeking relief." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (citations omitted). Indeed, these criteria "should be construed generously" and the Court may also consider "whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

The policy against default judgments is even stronger when entered against foreign sovereign nations. *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 240 (2d Cir. 1994) ("[D]efault judgments are disfavored, especially those against foreign sovereigns""); *First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda–Permanent Mission*, 877 F.2d 189, 196 (2d Cir. 1989) ("Courts go to great lengths to avoid default judgments against foreign sovereigns or to permit those judgments to be set aside."). Default judgments are further disfavored when "large sums of money were involved." *G&A Strategic Investments*, 2024 WL 4520067, at *3 (citing *Sony Corp. v. ELM State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986)). As shown below, vacatur is warranted because the Republic's default was not willful, it has numerous meritorious defenses, and vacatur will not prejudice Plaintiffs.

**A. <u>The Republic's Default Was Not Willful.</u>**

The touchstone of the analysis under Rule 60(b)(6) is the movant's lack of willfulness: relief is warranted where the party's predicament was not the product of "free, calculated, deliberate choices." *BLOM Bank*, 605 U.S. at 212 (citations omitted). As such, willfulness is the most heavily weighted factor, *In re Orion HealthCorp, Inc.*, 95 F.4th 98, 104 (2d Cir. 2024), and it is not satisfied here. A default is willful only where the defendant's conduct is "egregious" or "deliberate" and "not satisfactorily explained"; it must be something more than mere negligence. *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998); *Green*, 420 F.3d at 108.

**1. The Real Government Was Barred from Defending This Action.**

The Republic's failure to appear was neither egregious nor deliberate; it was the product of a unique constitutional and geopolitical rupture and of U.S. sanctions beyond its control. The Venezuelan Government now before the Court was legally barred from appearing until March 2026. *Republic of Panama v. Air Panama Internacional, S.A.*, 745 F. Supp. 669, 676 (S.D. Fla. 1988) ("Only governments recognized by the United States are entitled to access to United States courts"). The sham governments previously recognized by the U.S. between the 2020 filing of the lawsuit and the 2023 default judgment were different sovereign administrations whose litigation posture cannot fairly be charged to the movant as willful defiance.

The default thus did not reflect a "deliberate" litigation choice by a party able to defend, but a disqualification imposed by the Executive's recognition policy, a policy Plaintiffs themselves invoked to obtain their chosen method of service. (ECF No. 13 at 2.) In March 2026, the United States lifted that disqualification by recognizing the current Venezuelan Government, which has promptly appeared. A court confronting a change in the recognized government has discretion to adjust the litigation to reflect the new reality, including by realigning parties or permitting the recognized government to be heard. *Republic of Vietnam v. Pfizer, Inc.*, 556 F.2d 892, 894 (8th

Cir. 1977) ("While executive action pertaining to the recognition or nonrecognition of a foreign government is binding on the courts, the courts are nevertheless free to determine the legal consequences of that executive action upon pending litigation"). That is precisely the relief Rule 60(b)(6) empowers the Court to grant and even if the Court concludes that default judgment was proper in 2023, it should conclude that vacatur is proper now.

This is not a case, like those finding willfulness, in which a defendant with actual notice "purposely evaded service" (*McNulty*, 137 F.3d at 739) or made "a strategic decision to default." *American Alliance*, 92 F.3d at 60. The Caracas-based government's inability to defend against this action was not its choice; it was the product of the United States' "interim" recognition decisions, since changed, which were "binding on this Court." (ECF No. 13 at 2.) Which government is recognized to represent a foreign state "is a political rather than a judicial question," and the Executive's recognition decision "is conclusive on all domestic courts, which are bound to accept that determination." *Guaranty Trust Co. of New York v. United States*, 304 U.S. 126, 137-38 (1938); *Republic of Panama*, 745 F. Supp. at 674; *accord CITGO Petro. Corp. v. Ascot Underwriting Ltd.*, 158 F.4th 368, 386, 388-89 (2d Cir. 2025). It follows that suit on a foreign state's behalf "may be maintained . . . only by that government which has been recognized by the political department of our own government," *Guaranty Trust*, 304 U.S. at 137, and, conversely, that "agents and instrumentalities of unrecognized governments are denied access to United States courts." *Republic of Panama*, 745 F. Supp. at 676. The principles espoused in *Guaranty Trust*

remain the law. *Venezuela US SRL v. Bolivarian Republic of Venezuela*, 178 F.4th 679, 683 (D.C. Cir. 2026) (quoting *Guaranty Trust* regarding recognition binding courts).[6]

Even if the real Venezuelan government had been permitted to appear in U.S. court, comprehensive OFAC sanctions would have prevented its mounting of a defense. Executive Order 13,884 blocked "all property and interests in property of the Government of Venezuela that are in the United States" (84 Fed. Reg. 38,843 (Aug. 7, 2019)), and OFAC regulations barred dealings in that property absent a specific license. *Casa Express Corp. v. Bolivarian Republic of Venezuela*, 492 F. Supp. 3d 222, 228-29 (S.D.N.Y. 2020). When the Default Judgment was entered, the U.S. Executive Branch (to which OFAC belongs) recognized only the sham Guaidó group and prevented the real government from appearing in U.S. courts. Those measures would have made it structurally difficult, if not impossible, for the real government to transfer funds to retain counsel, a barrier confirmed by Plaintiffs' own acknowledgment of the sham Guaidó's group "difficult[y] retaining counsel." (ECF No. 33 at 2–3.) Courts recognize that a foreign state's failure to respond is excusable, and not willful, where it is "in considerable measure out of the [sovereign's] control" due to "substantial political and institutional" disruption. *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 447 F.3d 835, 840-41 (D.C. Cir. 2006).

---

[6] In inapposite circumstances, a standard transition in governmental authority is not an extraordinary circumstance because, unlike here, a successor government typically is in privity with its predecessor. *Socialist Republic of Romania v. Wildenstein & Co.*, 147 F.R.D. 62, 66 (S.D.N.Y. 1993); *Republic of Iraq v. ABB AG*, 768 F.3d 145, 165-66 (2d Cir. 2014). However, those cases involved internal transitions within a single, continuously recognized state: a government that always had capacity to appear and simply changed hands. This case involves the opposite: a change in which government the United States recognized as capable of appearing at all. The predecessor here was not a government that chose to litigate differently; it was a government the Executive had displaced from access to this Court. That is the rare circumstance in which the privity rationale does not attach, because the party now before the Court never had, and was legally forbidden from having, a voice in the default. Relief under Rule 60(b)(6) is warranted.

**2. Service Was Directed Only to the Sham Guaidó Group, Not the Real Government of Venezuela.**

A defendant's lack of actual notice of an action, even where service was properly effected, can support a finding that its default was not willful. *See Drywall Tapers & Pointers of Greater N.Y. Local Union 1974, IUPAT, AFL-CIO v. Creative Installations, Inc.*, 343 F.R.D. 358, 364 (S.D.N.Y. 2022); *accord Flores v. El Bukanitas Inc.*, 2025 WL 3460744, at *3 (E.D.N.Y. Aug. 8, 2025); *cf. G&A Strategic Investments*, 2024 WL 4520067, at *2-3. That principle is decisive here.

The record confirms that no notice of this action—formal or actual—was ever provided to the real government of Venezuela. Every transmittal of process in this case ran exclusively through the diplomatic apparatus of the U.S.-recognized so-called 'interim' government. The Summons and Second Amended Complaint were delivered on May 21, 2021 to the Venezuelan embassy in Washington, D.C.—an embassy then controlled by the Guaidó group. (ECF No. 31-1, at 2, 4 ¶¶ 13, 28; *see also* ECF No. 66-10; ECF No. 13, at 2 ¶ 21.) The default judgment was later transmitted through that same channel on October 11, 2023. (ECF No. 86, at 1–2 ¶¶ 15–19; ECF No. 77.) Nothing in the record reflects that the pleadings or the judgment ever reached the real government in Caracas. That absence is no accident. The one method of service that would have delivered process to that government, service on the Venezuelan Ministry of Foreign Affairs in Caracas under 28 U.S.C. § 1608(a)(2)-(3), was deliberately foregone as unavailable, precisely because resorting to it "would require the Court to recognize the actions and decrees of the Maduro regime, in contravention of the Executive's exclusive recognition of Juan Guaidó." (ECF No. 13, at 4 ¶ 37.) Thus, nothing in the record indicates a willful default by the real Venezuelan government.

**3. Upon Regaining Capacity and Recognition, the Republic Has Moved Promptly and in Good Faith.**

The Republic's conduct following President Rodríguez's recognition demonstrates its good faith and willingness to defend against this action. Since the recent U.S. Executive Branch

recognition and resulting ability to appear in U.S. litigation, the Republic has not sat on its rights. It very recently has appeared and participated in U.S. litigation to protect Venezuelan assets (see El País Article, at 2), including many cases in this District and in state court in Manhattan.[7] The Republic recently retained counsel in this matter who are filing this motion as their first appearance. This prompt, constructive engagement is the opposite of the "egregious" and unexplained conduct that supports a willfulness finding, and it confirms that the 2023 default was a product of the prior period of geopolitical gridlock, not a considered decision to defy this Court.

**B. <u>The Republic Has Meritorious Defenses.</u>**

To satisfy the meritorious defense requirement, the Republic "need not establish [its] defense conclusively"; it need only "present evidence of facts that, if proven at trial, would constitute a complete defense." *McNulty*, 137 F.3d at 740 (citations omitted). The defense "need not be ultimately persuasive at this stage"; it is enough that the defense "give the factfinder some determination to make." *American Alliance*, 92 F.3d at 61 (citations omitted). "Likelihood of success is not the measure"; a defense is meritorious if it contains "even a hint of a suggestion" which, if proven at trial, would constitute a complete defense. *Weisel v. Pischel*, 197 F.R.D. 231, 239 (E.D.N.Y. 2000) (citations omitted). The defaulting party thus "need only meet a low threshold to satisfy this factor." *Wildflower + Co. v. Mood Apparel, Ltd.*, 338 F.R.D. 192, 198 (S.D.N.Y. 2021) (citations omitted). This standard "should be construed generously" because "[d]efault

---

[7] *See*; *e.g.*, *Altana Credit*, No. 1:20-cv-08402 (S.D.N.Y.); *Arpesella*, No. 1:23-cv-08929 (S.D.N.Y.); *Cavara*, No. 1:25-cv-00165 (S.D.N.Y.); *Chickpen*, No. 1:21-cv-00597 (S.D.N.Y.); *Contrarian Cap.*, No. 1:19-cv-11018 (S.D.N.Y.); *Lovati [I]*, No. 1:19-cv-04793 (S.D.N.Y.); *Lovati [II]*, No. 1:19-cv-04796 (S.D.N.Y.); *Mazzaccone [I]*, No. 1:24-cv-06168 (S.D.N.Y.); *Mazzaccone [II]*, No. 1:24-cv-9114 (S.D.N.Y.); *Neuhauser*, No. 1:20-cv-10342 (S.D.N.Y.); *Paraticuara LTD*, No. 1:24-cv-007738 (S.D.N.Y.); *VGB Limited*, No. 1:23-cv-09933 (S.D.N.Y.); *Zahn*, No. 1:24-cv-9271 (S.D.N.Y.); *Altamira Investments*, No. 655341/2023 (N.Y. Sup. Ct.); *Copernico Recovery Fund*, No. 656172/2023 (N.Y. Sup. Ct.).

judgments 'are generally disfavored and are reserved for rare occasions.'" *Enron Oil*, 10 F.3d at 96 (quotation omitted). Based on its ongoing evaluation, the Republic has identified a number of defenses that more than meet this standard.

**Champerty.** New York Judiciary Law § 489(1) prohibits any "corporation or association," and any person "engaged directly or indirectly in the business of collection and adjustment of claims," from taking an assignment of a bond or other "thing in action . . . with the intent and for the purpose of bringing an action or proceeding thereon." N.Y. Jud. Law § 489(1) (McKinney 2020). An assignment that violates the statute is void. *Zahn v. Bolivarian Republic of Venezuela*, 2026 WL 2185589, at *6 (S.D.N.Y. July 29, 2026). To be champertous, "the *primary purpose* of the purchase must be to enable [one] to bring a suit, and the intent to bring a suit must not be merely incidental and contingent." *Justinian Cap. SPC v. WestLB AG*, 28 N.Y.3d 160, 166–67, 65 N.E.3d 1253 (2016). A court of this District recently found precisely this defense "sufficiently colorable" to support vacatur where a plaintiff purchased defaulted Venezuelan notes "in default and for nominal value" for the possibly "primary purpose" of suit. G*&A Strategic Investments*, 2024 WL 4520067, at *3. The "critical issue" is "the purpose behind the plaintiff's acquisition of rights," which necessarily requires a "fact-intensive analysis." *Zahn*, 2026 WL 2185589, at *6-7.

The record, as limited as it is at this stage, raises precisely that question. Plaintiffs are Cayman-organized investment funds and their fund manager—"corporation[s] or association[s]" squarely within the statute—whose distressed-debt vehicle, ACOF, was launched in July 2020 to acquire deeply discounted, already-defaulted Venezuelan sovereign bonds, and whose stated plan includes litigation. *See*, *supra*, Statement of Facts, at 3. Plaintiffs filed this action on October 8, 2020, within a few months of ACOF's launch. Then, after obtaining this default judgment through the apparent inaction of the sham Guaidó group, Plaintiffs sought to enter the court-supervised

CITGO sale process. (*See* ECF No. 90, at 2–3.) Indeed, the details of how Altana came to the idea of setting up a vehicle to pool Venezuelan government bonds for the purposes of litigation is the subject of publicly available court records.[8] These facts permit the inference that Plaintiffs acquired the bonds for the primary purpose of litigating and enforcing them, which, if proven, would void the assignments and defeat their claims. *Justinian*, 28 N.Y.3d at 166–67.

The Republic need not prove champerty now; it need only "present some evidence beyond conclusory denials to support his defense." *Enron Oil*, 10 F.3d at 98 (citations omitted). A court of this District recently held that the Republic's champerty defense to materially identical Venezuelan bond purchases require a "fact-intensive analysis" into the purchaser's purpose that a plaintiff must "devote considerable time to rebut." *Zahn*, 2026 WL 2185589, at *5–7. Recently, another court in this District has granted summary judgment against certain Venezuelan distressed debt funds on this basis of champerty. *See Syracuse Mountains Corp. v. Petróleos de Venezuela S.A.*, 2024 WL 3637997, at *3-6 (S.D.N.Y. August 1, 2024) (Caproni, J.).

**Standing and authorization to sue.** Under the FAAs, so long as the Depository's nominee (Cede & Co.) is the registered holder, it "will be considered the sole owner or holder" of the bonds, and beneficial owners "will not be considered the owners or holders." *Fontana v. Republic of Argentina*, 415 F.3d 238, 239 (2d Cir. 2005). A beneficial owner therefore "must receive authorization from the registered holder of the bond before it may sue." *Casa Express*, 492 F. Supp. 3d at 230. Plaintiffs submitted two such letters. One is a November 1, 2022 letter from Cede & Co. purporting to authorize "the Beneficial Owner"—identified as "Altana Credit Opportunities Fund SPC obo [on behalf of] Altana Credit Opportunities Fund 1 SP"—to exercise the rights of

[8] *IlliquidX Ltd. v. Altana Wealth*, [2026] EWCA Civ 874, [38]-[40], [68], [78]-[80] (appeal taken from Eng.), https://www.iclr.co.uk/document/2026006109/2026ewcaciv874_TNA/html (last visited Sept. 30, 2026).

the holder of record as to the bonds listed in an appendix. (ECF No. 66-32 at 2.) The second is an April 8, 2022 letter from Deutsche Bank AG, purporting to authorize "Altana Credit Opportunities Fund 1 SP and Altana Credit Opportunities Fund SPC" to exercise holder rights as to a single series, the 7.65% 2025 Global Notes (ISIN XS0217249126). (ECF No. 66-33 at 2). These letters do not resolve the standing inquiry but instead raise serious questions that, if resolved in the Republic's favor, would defeat the right to sue on some or all of the bonds.

*First*, the letters do not authorize every Plaintiff. Neither letter names Altana Funds Ltd. Cayman, the investment adviser that appears as a plaintiff yet concedes that it does not hold the bonds. (ECF No. 62 ¶ 10; ECF No. 72 at 1.)

*Second*, the authorization letters do not cover every Bond series and amount reduced to judgment; one entire series is missing altogether. The Deutsche Bank letter reaches only the 7.65% 2025 Notes (ISIN XS0217249126), referring to $1,427,000 in beneficial interests. (ECF No. 66-33 at 2, 4.) The Cede & Co. letter lists in Appendix A holdings totaling $287,303,400. (ECF No. 66-32 at 2, 4.) Neither letter covers the 12.75% 2022 Bonds (ISIN USP17625AC16) on which the Amended Default Judgment awarded Plaintiffs $72,363,500 of principal, $54,486,700.35 in accrued interest, and $13,258,638.73 in prejudgment interest. ECF No. 93 ¶ 3.[9] The omission may have been intentional: the 12.75% 2022 Bonds matured on August 23, 2022 (ECF No. 62 ¶¶ 44, 47), two months before the Cede letter's record date of October 24, 2022 (ECF No. 66-32). Plaintiffs thus hold no record-holder authorization for one of judgment's largest single components. The Cede letter also misidentifies the coupon rates for several bond series, listing the 7.75% 2019 Bonds as "7.00%," the 8.25% 2024 Bonds as "8.00%," and both the 11.75% 2026 and

[9] Plaintiffs pleaded $361,093,900 in total principal across all fourteen series (ECF No. 62-1); the Cede letter ($287,303,400) and the Deutsche Bank letter ($1,427,000) together account for only $288,730,400, precisely $72,363,500 short, the exact principal of the omitted 12.75% 2022 Bonds.

11.95% 2031 Bonds as "11.00%", so the letter does not cleanly match the series and sums embodied in the Sixth Amended Complaint or the judgment. (*See* ECF No. 66-32 at 4.)

*Third*, both authorizations are expressly limited, conditional, and dependent on Plaintiffs' own untested representations of ownership. Cede & Co. authorized action "solely with respect to the Subject Bonds held by Beneficial Owner," acted "only as a nominal party," and "assume[d] no further responsibility in this matter." (ECF No. 66-32 at 2–3.) Deutsche Bank AG, in turn, furnished its authorization only "to the extent that any such authorization is required under the fiscal agency agreement," and did so "solely at the request of and on the representations and undertakings of the Beneficial Owners" that they own the bonds, adding that it "makes no representation, warranty or undertaking" and "has signed this letter solely based upon the representations of the Beneficial Owners." (ECF No. 66-33 at 3.) These ownership representations were never subjected to adversarial testing.

*Fourth*, the letters rest on an unexamined custodial chain: Cede & Co. and DTC acted on the say-so of the participant, The Bank of New York Mellon, and do not establish that Plaintiffs acquired and held valid beneficial interests in compliance with the FAAs' own transfer and certification procedures. The Republic is entitled to probe whether they in fact confer standing on each Plaintiff for each bond in suit. Should they not, Plaintiffs cannot enforce those bonds—a failure of proof that, if established, would be a complete defense.

**The § 1608(e) evidentiary basis is contestable.** Because Plaintiffs sued a foreign state, the Default Judgment could be entered only on "evidence satisfactory to the court," 28 U.S.C. § 1608(e)—a heightened protection, modeled on the safeguard against unfounded default claims that the United States enjoys, as "the public fisc should be protected from claims that are unfounded but would be granted solely because the government failed to make a timely response."

*Commercial Bank of Kuwait*, 15 F.3d at 242 (quotation omitted). Under § 1608(e), "the Court cannot 'unquestioningly accept a complaint's unsupported allegations as true,' . . . but rather, it must require that the plaintiff set forth "uncontroverted factual allegations, which are supported by. . . documentary and affidavit evidence.'" *Neuhauser v. Bolivarian Republic of Venezuela*, 2023 WL 4350614, at *2-3 (S.D.N.Y. July 3, 2023) (citations omitted) (Torres, J.).

In an instructive decision, this Court denied a motion for a default judgment on Venezuelan bonds because the plaintiff "provide[d] no documentary or affidavit evidence" that it had obtained authorization to sue from the record holder, and the Court therefore "[could not] conclude" that the plaintiff had contractual standing. *Neuhauser*, 2023 WL 4350614, at *3. Another court likewise denied a default judgment against the Republic where the claimant's proof of an allegedly amended contract, based on unanswered letters, was not "satisfactory" under § 1608(e), especially "[i]n light of the strong policy against default judgments against foreign sovereigns." *Schafrann v. Republic of Venezuela*, 2002 WL 1766446, at *2 (S.D.N.Y. July 31, 2002). Here, the Court found standing and authorization on the untested declaration of Plaintiffs' counsel and its exhibits. (ECF No. 72 at 5.) If the Republic is permitted to contest that evidence, the deficiency that defeated the claimants in *Neuhauser* and *Schafrann* may defeat judgment here. And, as argued *infra*, in Part II, the Republic believes that this Court should reconsider whether § 1608 service prerequisites were satisfied.

**Compliance with the FAAs' transfer requirements.** The FAAs condition an effective transfer of a beneficial interest on specified procedures. Eleven of the fourteen bond series were issued pursuant to the 2001 FAA (*see* ECF No. 62-1), and Section 6 of the 2001 FAA conditions a valid transfer on the advance delivery of written certifications, registrations, and instructions. (ECF No. 66-30 (the 2001 FAA) § 6.) Under New York law, a transfer that fails to satisfy a

contractual condition on transferability is unenforceable against the obligor. *Brettler v. Allianz Life Ins. Co.*, 40 N.Y.3d 450, 455–57, 226 N.E.3d 885 (2023). Whether Plaintiffs acquired their interests in compliance with those conditions was never tested and, if resolved against them, potentially would be a complete defense.

**OFAC Sanctions**. If the judgment is vacated, the Republic would request discovery into the ownership and ownership structure of the Plaintiffs to investigate whether ACOF was created, in whole or in part, to enable investors to avoid the effects of OFAC sanctions. During the period most relevant here, General License 3H (effective May 12, 2020) did not authorize U.S. Persons to directly or indirectly purchase or invest in or facilitate the purchase of or investment by U.S. Persons in, the Republic's bonds. Pub. of Venezuela Sanctions Regulations Web General License 3 and Subsequent Iterations, 87 Fed. Reg. 62001, 62007 (Oct. 13, 2022) (codified at 31 C.F.R. pt. 591). OFAC's definition of "U.S. Person" is broad, reaching "any person in the United States" regardless of citizenship or residence, as well as U.S. citizens and residents, wherever they are located. 31 C.F.R. § 591.312. "Blocked persons," identified on OFAC's Specially Designated Nationals and Blocked Persons ("SDN") List, may not collect on a judgment or settlement without a specific OFAC license. *FAQ 808*, Off. of Foreign Assets Control (May 1, 2023), https://ofac.treasury.gov/faqs/808. Damages are not admitted by default and must be independently proved. *Hill v. Republic of Iraq*, 328 F.3d 680, 683-84 (D.C. Cir. 2003).

OFAC's "50 Percent Rule" further provides that "any entity owned in the aggregate, directly or indirectly, 50 percent or more by one or more blocked persons is itself" blocked, even if not named on the SDN list. *Revised Guidance on Entities Owned by Persons Whose Property and Interests in Property Are Blocked*, Off. Of Foreign Assets Control (Aug. 13, 2014), https://ofac.treasury.gov/media/6186/download?inline. Applying that rule requires examining an

entity's ownership structure, including whether its owners are sanctioned or are themselves owned by sanctioned persons. *FAQ 401*, Off. of Foreign Assets Control (Aug. 13, 2014), https://ofac.treasury.gov/faqs/401. Altana's structure may enable investors to transfer Republic Bonds to ostensibly non-U.S. entities: all Plaintiffs are incorporated in the Cayman Islands with alleged principal places of business there. (ECF No. 62 ¶¶ 6-9.) Despite their Cayman presence, Plaintiffs may be managed at least in part from the United States. Lee Robinson, who founded Altana around 2010 and remains its controlling shareholder and CIO,[10] apparently is "based out of [the] United States"[11] and as such, would likely be a U.S. Person, as defined by OFAC. Having had no opportunity to engage in discovery, the Republic has no information about the people and entities who invested in ACOF or of its managerial team.

While the Republic need not prevail upon any of these defenses now, each raises a "serious question" going to the validity of Plaintiffs' claims and, if proven at trial, would be a complete defense—which is all Rule 60(b) requires. *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983).

### C. <u>Vacating the Judgment Will Not Prejudice Plaintiffs.</u>

The final factor also favors vacatur. No cognizable prejudice would ensue from vacatur because Plaintiffs cannot show that vacatur "will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis*, 713 F.2d at 916. This is a documentary breach-of-contract case; the operative facts are memorialized in the FAAs, the bonds, and the parties' records, so vacatur does not risk loss of evidence or impediment

---

[10] *Hedge Fund Veteran Lee Robinson's Altana Wealth Steps into the SPACs Surge with New Launch*, Hedgeweek (Mar. 26, 2021), https://hedgeweek.com/news/hedge-fund-veteran-lee-robinsons-altana-wealth-steps-spacs-surge-new-launch/ (last visited Sept. 28, 2026).

[11] *Lee Robinson — Portfolio and Founded Companies*, Tracxn, https://tracxn.com/d/people/lee-robinson/__42lPBKC5frrefZlnL7WHrO1n-JmaXuE-_QoDe2eerMk (last visited Sept. 28, 2026).

to discovery. Nor is the delay attributable to gamesmanship; it reflects the U.S. recognition decisions described above.

That vacatur would delay Plaintiffs' collection efforts during the pendency of this motion does not constitute prejudice under Rule 60(b). Prejudice requires more than mere delay or the passage of time. *Green*, 420 F.3d at 110 ("delay alone is not a sufficient basis for establishing prejudice . . . something more is needed"); *Enron Oil*, 10 F.3d at 98 ("delay standing alone does not establish prejudice"). The loss of an enforcement advantage secured through a one-sided default is not the kind of prejudice that defeats a motion to vacate; if it were, no default judgment could ever be reopened. In *G&A Strategic*, the court rejected an identical argument that vacatur would prejudice bondholders in a parallel Delaware enforcement proceeding, explaining that any such effect "would only be by the effect of plaintiffs' litigation strategy, for which th[e] Court can bear no responsibility." 2024 WL 4520067, at *3. The lack of prejudice is particularly manifest in this case, where various regulatory, procedural, and financial hurdles have impeded Plaintiffs' collection efforts in the three years since the Default Judgment was entered.

The experience of the plaintiffs in a comparable action filed in this Court is instructive due to the parallels with the Altana Plaintiffs. In October 2021, the plaintiffs in *Pharo Gaia Fund, Ltd. v. Bolivarian Republic of Venezuela*, obtained a default judgment against the Republic for over $1.3 billion. 2025 WL 1268864, at *1 (S.D.N.Y. May 1, 2025) (Torres, J.). Like the Altana Plaintiffs, the *Pharo* plaintiffs registered their judgment in Delaware federal court—their only enforcement avenue due to OFAC sanctions—sought to enforce their judgment and engaged in post-judgment discovery. *Id*. Afterwards, the Pharo plaintiffs came to learn that, at that time, they were behind "preceding Plaintiffs [who] hold approximately $18 billion in judgments." *Id*. Further, "Plaintiffs' judgment has had the practical effect of making it more difficult for them to transfer

or otherwise deal efficiently with the underlying bonds. Because a portion of the debt originally evidenced by the bonds has merged into the judgment, Plaintiffs' bonds are not fungible with bonds that are not subject to a judgment." *Id*. at *2. Finally, after years of fruitless enforcement efforts, the *Pharo* plaintiffs filed their own Rule 60(b) motion to vacate the judgment they had received and to dismiss the underlying claims without prejudice under Rule 41(a)(2), and this Court granted the motion. *Pharo Gaia Fund, Ltd. v. Bolivarian Republic of Venezuela*, 2025 WL 1284787, at *1-3 (S.D.N.Y. May 1, 2025).

The Altana Plaintiffs are sophisticated actors who bought defaulted paper with litigation risk priced in and their own conduct belies urgency: they sought and received eight extensions before moving for default judgment (ECF No. 63 at 1) and amended their complaint five times. (*See* ECF No. 62.) Plaintiffs' place in the line of Venezuela's creditors is not the kind of cognizable prejudice that outweighs the Republic's right, and the strong federal policy, to a decision on the merits. *See Enron Oil*, 10 F.3d at 95. Against the Second Circuit's command that "all doubts must be resolved in favor of the party seeking relief," *Green*, 420 F.3d at 104, the lack of any cognizable prejudice here is significantly outweighed by the interest in adjudicating a $589 million claim against a foreign sovereign on its merits.

**D. <u>The Republic's Motion is Timely.</u>**

A Rule 60(b) motion must be made "within a reasonable time." Fed. R. Civ. P. 60(c)(1). This standard requires the Court to "balance the interest in finality with the reasons for delay." *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983). That standard should be measured from the extraordinary circumstances that triggered it. It was not until March 2026 that the U.S. recognized Acting President Delcy Rodríguez as Venezuela's head of state. Statement of Interest of the United States, *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, No. 16 Misc. 405 (S.D.N.Y. Mar. 11, 2026), ECF No. 621, at 1. Measured from when the real

government gained the U.S. Executive Branch's recognition (and given the massive disruption caused by a national, humanitarian emergency resulting from the June 2026 earthquakes), this motion has been brought within a reasonable time. Any delay arguably present here compares favorably with the four-month delay in *G&A Strategic*, in which the Court vacated the default judgment pursuant to Rule 60(b)(6). *See* 2024 WL 4520067, at *3. The Republic has thus moved swiftly after acquiring the ability to appear. On these facts, and with all doubts resolved in favor of the merits, the motion is timely. *Green*, 420 F.3d at 104.

## II. THE DEFAULT JUDGMENT ALSO IS VOID UNDER RULE 60(b)(4) BECAUSE SERVICE DID NOT COMPLY WITH THE FSIA.

Independent of the discretionary factors above, the judgment is void and must be vacated under Rule 60(b)(4), for which relief is not discretionary. *Irvin v. Harris*, 944 F.3d 63, 68 (2d Cir. 2019) ("Indeed, Rule 60(b)(4) is unique . . . because relief is not discretionary"); *see Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 733 n.3 (2d Cir. 1980). Under the FSIA, a court acquires personal jurisdiction over a foreign state through service under § 1608, 28 U.S.C. § 1330(b); *see Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1020 (2d Cir. 1991), and a default judgment entered without it is void. *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 124-25 (2d Cir. 2017).

Service under § 1608(a) demands strict compliance; neither substantial compliance nor actual notice excuses a defect. *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994); *see Republic of Sudan v. Harrison*, 587 U.S. 1, 19 (2019) (in FSIA cases "the rule of law demands adherence to strict requirements"). The statute's four methods operate as an exclusive hierarchy: a plaintiff "must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on," *Neuhauser*, 2023 WL 4350614,

at *2, so that service through the Secretary of State under § 1608(a)(4) is permissible only if service cannot be made within 30 days under paragraph (3). 28 U.S.C. § 1608(a)(4). Section 1608(a)(3), in turn, requires a clerk-dispatched mailing, which in turn requires a signed receipt, sent directly to the foreign minister's office in the foreign state. *Harrison*, 587 U.S. at 8.

Plaintiffs never attempted § 1608(a)(3) service; they proceeded directly to § 1608(a)(4) on the representation that mail service was "categorically unavailable." (ECF No. 13 at 4.) That predicate was legally erroneous. Plaintiffs relied on Venezuela's objection to service by postal channels, a matter governed by § 1608(a)(2), not on the separately required § 1608(a)(3) mailing. Because the § 1608(a)(3) predicate was not satisfied, service did not conform to § 1608(a), the Court lacked jurisdiction under § 1330(b), and the judgment is void.

That this Court previously described § 1608(a)(3) as "appear[ing]" to be categorically unavailable does not compel a contrary result: that observation was tentative and cannot supply jurisdiction the statute withholds absent conforming service. Nor does *G&A Strategic* aid Plaintiffs: that decision upheld service on an instrumentality under the more lenient § 1608(b), which, unlike § 1608(a), tolerates faulty service affording actual notice, and turned on a process-agent "special arrangement" absent here. 2024 WL 4520067, at *2; *see Transaero*, 30 F.3d at 153-54. The proper course is to vacate the judgment and quash service, leaving Plaintiffs to perfect service under § 1608(a).

Further, though it is unknown whether the sham Guaidó group ever received notice of the SAC, none of the subsequent amended complaints were served, so any judgment resting on the claims first asserted after the SAC also is void for lack of personal jurisdiction and must be vacated under Rule 60(b)(4). Plaintiffs only purported to serve the Republic once, with the SAC, on May 21, 2021 (ECF No. 31 at 1); the Clerk's Certificate of Default confirms that no other pleading was

served. (ECF No. 37 at 1.) Under Rule 5(a)(2), "a pleading that asserts a new claim for relief against [a defaulting] party must be served on that party under Rule 4," and Rule 4(j)(1) requires that a foreign state be served in accordance with 28 U.S.C. § 1608.

The Sixth Amended Complaint asserted claims for relief absent from the SAC. It added a count for breach of the 7.00% 2018 Bonds seeking the entire unpaid principal (ECF No. 62 at 13–14 ¶¶ 100–105) whereas the only count in the SAC concerning a 7.00% bond concerned the distinct 7.00% 2038 Bonds and sought accrued interest alone (ECF No. 24 at 12 ¶¶ 94–98). On that new claim, the Default Judgment awarded $3,150,000 in unpaid principal, plus interest. (ECF No. 76 at 8 ¶ 14.) Because the new claim was not properly served on Venezuela under Rule 4 and § 1608, the Court never acquired personal jurisdiction over Venezuela as to them. *See* 28 U.S.C. § 1330(b). A judgment entered against Venezuela without § 1608 service and the personal jurisdiction it confers is void. *Mobil Cerro Negro*, 863 F.3d at 124-25 (judgment against Venezuela "void" absent FSIA compliant service and personal jurisdiction). The Default Judgment is therefore void, at minimum, as to every claim for relief that appeared for the first time after the Second Amended Complaint.

## III. THE COURT SHOULD STAY ENFORCEMENT PENDING RESOLUTION OF THIS MOTION.

Finally, the Court should stay enforcement pending resolution of this motion. A district court has broad discretion to stay enforcement of its own judgment pending disposition of a Rule 60(b) motion, and a stay is particularly appropriate where vacatur would impact the creditor's enforcement efforts. *See Knox v. Bank of N.Y.*, 508 F. Supp. 2d 249, 251 (S.D.N.Y. 2007) (exercising "its discretion" to stay a proceeding to enforce a default judgment against a sovereign-type debtor because the debtor's pending Rule 60(b) motion, if granted, "would necessarily impact this turnover proceeding seeking enforcement of that judgment"); *Estate of Ungar v. Palestinian*

*Auth.*, 344 F. App'x 631, 633 (2d Cir. 2009) (summary order) (treating a stay of enforcement of a default judgment "until the final resolution of a motion for vacatur" as a proper exercise of the district court's "inherent power . . . to control its own docket"); *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket"); *Harmon Kardon, Inc. v. Ashley Hi-Fi*, 602 F.2d 21, 22-23 (1st Cir. 1979) (approving stay of execution of a default judgment to allow a Rule 60(b) motion).

A stay "simply suspends judicial alteration of the status quo," *Nken v. Holder*, 556 U.S. 418, 429 (2009) (citations omitted), and would not prejudice Plaintiffs, whose asserted interest is purely monetary and thus fully compensable by the judgment they hold. Plaintiffs are actively pursuing post-judgment discovery and attachment (ECF No. 98); allowing execution against the Republic′s U.S. property to proceed before the validity of the underlying judgment is resolved would risk irreparable disruption to sovereign assets that a stay would avoid. A brief stay pending resolution of a dispositive Rule 60(b) motion is a well justified exercise of the Court′s inherent authority to control its docket.

## **CONCLUSION**

For the foregoing reasons, the Republic respectfully requests that the Court vacate the Default Judgment (ECF No. 76) and the Amended Default Judgment (ECF No. 93) under Rule 60(b), stay enforcement pending resolution of this motion, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 30, 2026

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Hal S. Shaftel*
Hal S. Shaftel
One Vanderbilt Avenue
New York, NY 10017
Tel: (212) 801-9200
shaftelh@gtlaw.com

*Counsel for Defendant the Bolivarian Republic of Venezuela*

**LOCAL RULE 7.1(c) CERTIFICATION**

I, Hal S. Shaftel, an attorney duly admitted to practice before this Court, hereby certify that this Memorandum of Law in Support of Defendant's Motion to Vacate the Default Judgment complies with the word limit set forth in Local Rule 7.1(c), as it contains 8,086 words, excluding those items permitted for exclusion under this Local Rule. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

*/s/ Hal S. Shaftel*
Hal S. Shaftel