**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALTANA CREDIT OPPORTUNITIES FUND SPC, ALTANA CREDIT OPPORTUNITIES FUND 1 SP, and ALTANA FUNDS LTD. CAYMAN,<br><br>Plaintiffs,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>Defendant. | Case No. 1:20-cv-8402 (AT)<br>[rel. 1:19-cv-3123 (AT)] |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE THE DEFAULT JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 3

A. This Court Entered Judgment Against Venezuela Following Valid Service Of Process, Consideration Of A Fully Developed Evidentiary Record, And A Final Adjudication On The Merits ........ 3

B. Plaintiffs Registered This Court's Judgment In The U.S. District Court For The District Of Delaware, Where Venezuela Unsuccessfully Made Similar Arguments It Now Makes Here ........ 7

C. Venezuela's Motion, Filed In 2026, Seeks To Vacate The Court's Judgment Entered In 2023 ........ 8

LEGAL STANDARD ........ 8

ARGUMENT ........ 10

I. Venezuela Cannot Use Rule 60(b)(6) To Undo Its Deliberate Default And Years Of Delay ........ 10

A. Venezuela Is Responsible For The Willful Default In This Court By Venezuela's Own Government ........ 10

B. Venezuela Fails To Offer Any Meritorious Defense ........ 14

C. Vacatur Would Reward Venezuela's Delay And Prejudice Plaintiffs In A Finite-Asset Enforcement Process ........ 20

II. Venezuela's Secondary Rule 60(b)(4) Argument Is Meritless ........ 21

III. Venezuela's Motion Is Untimely By Years ........ 23

IV. The Court Should Deny A Stay That Would Reward Venezuela's Delay And Jeopardize Plaintiffs' Enforcement Position ........ 24

CONCLUSION ........ 26

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires*,
415 F.3d 242 (2d Cir. 2005).....17

*American Alliance Insurance Co. v. Eagle Insurance Co.*,
92 F.3d 57 (2d Cir. 1996).....10

*Aquila Alpha LLC v. Ehrenberg (In re Orion HealthCorp., Inc.)*,
95 F.4th 98 (2d Cir. 2024).....9

*Barretta v. Wells Fargo Bank, N.A.*,
693 F. App'x 26 (2d Cir. 2017).....25

*BLOM Bank SAL v. Honickman*,
605 U.S. 204 (2025).....9, 11, 21

*Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Construction, LLC*,
779 F.3d 182 (2d Cir. 2015).....10, 14, 18

*Casa Express Corp. ex rel. Casa Express Trust v. Bolivarian Republic of Venezuela*,
492 F. Supp. 3d 222 (S.D.N.Y. 2020).....25

*Central Vermont Publishing Service Corp. v. Herbert*,
341 F.3d 186 (2d Cir. 2003).....8, 9

*Coney Island Auto Parts Unlimited, Inc. v. Burton*,
607 U.S. 155 (2026).....8, 23

*Elliott Assocs., L.P. v. Banco de la Nacion*,
194 F.3d 363 (2d Cir. 1999).....16

*Etevob v. Republic of Argentina*,
471 F. Supp. 2d 432 (S.D.N.Y. 2007).....17

*Fontana v. Republic of Argentina*,
415 F.3d 238 (2d Cir. 2005).....17

*Fulton Holding Group, LLC v. Lindoff*,
87 N.Y.S.3d 66 (2d Dep't 2018).....14

*G&A Strategic Investments I LLC v. Petróleos de Venezuela, S.A.*,
2024 WL 4520067 (S.D.N.Y. Oct. 17, 2024).....11, 12, 14

*G&A Strategic Investments I LLC v. Petróleos de Venezuela, S.A.*,
788 F. Supp. 3d 616 (S.D.N.Y. 2025).....14

*Gater Assets Ltd. v. AO Moldovagaz*,
2 F.4th 42 (2d Cir. 2021) ....................9, 10

*Guaranty Trust Co. of New York v. United States*,
304 U.S. 126 (1938)....................12, 14

*IKB International S.A. v. Morgan Stanley*,
207 N.Y.S.3d 488 (1st Dep't 2024) ....................15

*Jackson v. People's Republic of China*,
550 F. Supp. 869 (N.D. Ala. 1982)....................14

*Justinian Capital SPC v. WestLB AG*,
65 N.E.3d 1253 (N.Y. 2016)....................15

*Kellogg v. Strack*,
269 F.3d 100 (2d Cir. 2001)....................23

*Kemp v. United States*,
596 U.S. 528 (2022)....................8, 9

*Landis v. North America Co.*,
299 U.S. 248 (1936)....................25

*Neuhauser v. Bolivarian Republic of Venezuela*,
2023 WL 4350614 (S.D.N.Y. July 3, 2023) ....................18

*New York v. Green*,
420 F.3d 99 (2d Cir. 2005)....................9, 14

*OI European Group B.V. v. Bolivarian Republic of Venezuela*,
73 F.4th 157 (3d Cir. 2023) ....................12

*Pashaian v. Eccelston Properties, Ltd.*,
88 F.3d 77 (2d Cir. 1996)....................20

*Republic of Iraq v. ABB AG*,
768 F.3d 145 (2d Cir. 2014)....................12

*The Sapphire*,
78 U.S. (11 Wall.) 164 (1871) ....................12

*SEC v. Bronson*,
602 F. Supp. 3d 599 (S.D.N.Y. 2022)....................23

*SEC v. Romeril*,
15 F.4th 166 (2d Cir. 2021) ....................9, 10, 23

*Socialist Republic of Romania v. Wildenstein & Co.*,
147 F.R.D. 62 (S.D.N.Y. 1993) ....................12, 13, 23

*State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*,
374 F.3d 158 (2d Cir. 2004)....20

*Stevens v. Miller*,
676 F.3d 62 (2d Cir. 2012)....9

*Syracuse Mountains Corp. v. Petróleos de Venezuela S.A.*,
2024 WL 3637997 (S.D.N.Y. Aug. 1, 2024)....15

*Trust for Certificate Holders of Merrill Lynch Mortgage Investors, Inc. v. Love Funding Corp.*,
918 N.E.2d 889 (N.Y. 2009)....16

*United States v. Curtiss-Wright Export Corp.*,
299 U.S. 304 (1936)....12

*United States v. International Brotherhood of Teamsters*,
247 F.3d 370 (2d Cir. 2001)....9

*United States v. National City Bank of New York*,
90 F. Supp. 448 (S.D.N.Y. 1950)....13, 14

*United Student Aid Funds, Inc. v. Espinosa*,
559 U.S. 260 (2010)....10

*Universal Investment Advisory SA v. Bakrie Telecom PTE*,
62 N.Y.S.3d 1 (1st Dep't 2017)....15

*Yousefzadeh v. Johnson & Johnson Consumer Inc.*,
184 F.4th 130 (2d Cir. 2026)....9, 11

*Zahn v. Bolivarian Republic of Venezuela*,
2026 WL 2185589 (S.D.N.Y. July 29, 2026)....15

**DOCKETED CASES**

*Altana Credit Opportunities Fund SPC v. Bolivarian Republic of Venezuela*,
No. 23-mc-00608-LPS (D. Del.)....7

*Casa Express Corp. v. Bolivarian Republic of Venezuela*,
No. 18-cv-11940-AT (S.D.N.Y.)....22

*Crystallex International Corp. v. Bolivarian Republic of Venezuela*,
No. 17-mc-00151-LPS (D. Del.)....7, 8

*Lovati v. Bolivarian Republic of Venezuela*,
No. 1:19-cv-04796 (S.D.N.Y.)....4, 5, 22

*Pharo Gaia Fund Ltd. v. Bolivarian Republic of Venezuela*,
No. 1:19-cv-03123 (S.D.N.Y.)....5

## STATUTES, RULES, AND REGULATIONS

28 U.S.C. § 1608(a) ....................18, 21

28 U.S.C. § 1608(a)(2)....................22

28 U.S.C. § 1608(a)(3)....................21, 22

28 U.S.C. § 1608(a)(4)....................3, 4, 5, 6, 7, 11, 21, 22

28 U.S.C. § 1608(e) ....................1, 6, 18

28 U.S.C. § 1610(c) ....................6, 24

Fed. R. Civ. P. 5....................4, 23

Fed. R. Civ. P. 55....................11

Fed. R. Civ. P. 60....................2, 7, 8, 9, 10, 11, 13, 14, 19, 20, 21, 23, 24

Foreign Sovereign Immunities Act at 28 U.S.C. § 1608 ....................1, 2, 3, 4, 5, 6, 21

N.Y. Judiciary Law § 489(2) ....................14

## OTHER AUTHORITIES

*Address by President Carter to the Nation on Diplomatic Relations Between the United States and the People's Republic of China* (Dec. 15, 1978), https://perma.cc/YG9W-ERT7 ....................14

Judgment of 10 July 2026, *IlliquidX Ltd. v. Altana Wealth*, [2026] EWCA Civ 874 ....................15

## INTRODUCTION

Having defaulted on its sovereign debt, ignored this Court's adjudication of that default, and sat on its hands for three years following this Court's judgment in Plaintiffs' favor, the Bolivarian Republic of Venezuela now brings a meritless motion to try to relitigate that long-settled judgment. The motion should be rejected because Venezuela's arguments are not colorable—much less grounded in law—and omit material facts fatal to its positions. This Court entered final judgment in 2023 following a multiyear adjudication in which Plaintiffs complied with every element of the Foreign Sovereign Immunities Act and satisfied 28 U.S.C. § 1608(e)'s heightened evidentiary standard. Venezuela was properly served, refused to appear in this Court, refused to participate in these proceedings, declined to proffer any defense, and declined to object or appeal. Now, three years later, Venezuela has suddenly appeared for the first time—not to take responsibility for its debt by paying the judgment this Court rendered, but instead to ask this Court to ignore settled law, reopen a final and binding judgment, and waste judicial resources on meritless arguments.

Venezuela's baseless gambit should be rejected. Its default on sovereign debt was wrongful. Its default in these proceedings was willful. It presents no colorable arguments to undo the final judgment this Court rightly entered three years ago. Plaintiffs would suffer obvious and irreparable harm from vacatur, while Venezuela identifies no legitimate basis for its plea.

Each of Venezuela's arguments is fatally flawed. *First*, the motion rests on the frivolous notion that Venezuela can escape this Court's judgment on the ground that the default occurred during a prior Venezuelan administration. It is black-letter law that the Venezuelan government recognized by the United States is the government that acts for Venezuela in U.S. courts. Here, that government was properly served and willfully chose not to appear in this Court. Instead, it accepted a default judgment in these proceedings and declined to object or appeal, which means

this Court's judgment is binding on Venezuela today. Venezuela's repeated insistence that the "sham Guaidó" government had no authority is baseless under longstanding Supreme Court and Second Circuit precedent.

*Second*, Venezuela's repeated assertion that it lacked "actual notice" is false. Plaintiffs completed the Court-authorized diplomatic-service process under the FSIA and repeatedly notified counsel representing Venezuela in other matters in this Court of developments in this action. Even putting all of that aside, by January 2024, Venezuela demonstrated its actual notice of the judgment by *actively opposing* Plaintiffs' efforts to enforce it in federal-court proceedings in Delaware. There, Venezuela presented similar arguments to those it now presents here, insisting (wrongly) that Plaintiffs "fail[ed] to comply with the FSIA's requirements for the service of default judgments," and criticizing "Altana [as] an opportunistic investor in distressed debt," as if that self-serving assessment could somehow erase the roughly $600 million judgment debt that Venezuela owes to Plaintiffs. Ignoring those Delaware proceedings, Venezuela now has the audacity to falsely argue here that it had no notice of a case it chose to ignore and then collaterally attack in another federal court. Try as Venezuela might to mislead the Court, the fact is that Venezuela received actual notice of these proceedings on multiple occasions, including when it was served by the U.S. government through diplomatic channels and when its lawyers actively litigating in other proceedings were given courtesy notices by Plaintiffs. In any case, Rule 60(b) does not permit Venezuela to challenge the judgment collaterally in another federal court, wait while Plaintiffs incur years of expense trying (unsuccessfully) to enforce the judgment, and then seek to reopen the judgment based on false assertions of a lack of notice. And if Venezuela means to argue that Nicolás Maduro's unrecognized government lacked actual notice, that is irrelevant under U.S. law and also untrue, as even that government was well aware of bondholders' efforts to enforce their rights in U.S. courts. Suggesting falsely that Venezuela

lacked actual notice is impermissible in this Court, not to mention separately fatal to Venezuela's motion.

*Third*, Venezuela's merits arguments are equally unprincipled. The champerty statute Venezuela invokes is inapplicable on its face because of the amounts in dispute. Even if the champerty statute were to apply, Venezuela's argument rests on unfounded speculation about Plaintiffs' legitimate investment purpose in buying Venezuela's bonds. Venezuela identifies nothing in the record to support its argument. Nor does it offer any factual support for its other baseless theories about transfer restrictions and OFAC regulations.

*Fourth*, this is not at all a case of "mere delay," as Venezuela asserts. Plaintiffs have spent years obtaining, registering, and seeking to enforce this Court's judgment. Vacatur would undo all that work, require Plaintiffs to start over, and unfairly put Plaintiffs at the back of a long line of creditors—and for no reason, other than Venezuela's apparent desire to continue to avoid accountability for its debts under U.S. law.

*Fifth*, Venezuela's claim of improper service of the pleadings is wrong and, in any case, waived. Venezuela failed to make that argument in Delaware, where it fought enforcement, and it cannot make that argument now. Even if it could, this Court already has concluded—consistent with Venezuela's own express and unequivocal representations in court—that FSIA service under § 1608(a)(4) was proper.

Venezuela's motion should be denied.

## BACKGROUND

### A. This Court Entered Judgment Against Venezuela Following Valid Service Of Process, Consideration Of A Fully Developed Evidentiary Record, And A Final Adjudication On The Merits

Plaintiffs brought this action six years ago, on October 8, 2020, to obtain a judgment against Venezuela for defaults on sovereign bonds. ECF No. 1. Plaintiffs Altana Credit Opportunities Fund SPC and Altana Credit Opportunities Fund 1 SP are Cayman Islands

investment funds that are beneficial owners of the bonds; Plaintiff Altana Funds Ltd. Cayman is their investment adviser (collectively, "Plaintiffs" or "Altana"). Sixth Am. Compl. ¶¶ 6-10, ECF No. 62; Bowker Decl., ECF No. 66 at 2 ¶ 1 n.3; Robinson Decl., ECF No. 67 ¶ 1. Beginning in October 2017, Venezuela failed to pay semi-annual interest and principal on bonds that have since matured. Bowker Decl., ECF No. 66 ¶¶ 36-105; Robinson Decl., ECF No. 67 ¶¶ 3-90. Plaintiffs amended their pleadings as Venezuela continued to default. *See* ECF Nos. 12, 24, 42, 51, 59, 62. As this Court recognized, the substantive allegations and claims throughout the proceedings were based on breaches of contracts for defaults on sovereign bonds. *See* ECF No. 61 (ruling that service of the Sixth Amended Complaint was unnecessary under Fed. R. Civ. P. 5(a)(1)(B), (2) because the claims were "substantially similar" across each of the prior pleadings); *see also* ECF Nos. 41, 50, 58.

The Court supervised and approved the service process in accordance with the Foreign Sovereign Immunities Act at 28 U.S.C. § 1608. Consistent with Venezuela's own express, unequivocal, and repeated representations in this Court that 28 U.S.C. § 1608(a)(4) was "'[t]he only method of service currently available against the Republic,'" Plaintiffs requested authorization from the Court to serve under § 1608(a)(4). ECF No. 13 at 3 (quoting Mem. in Supp. of Mot. to Vacate Certificate of Default & Dismiss for Lack of Personal Jurisdiction at 17, *Lovati v. Bolivarian Republic of Venezuela*, No. 1:19-cv-04796 (S.D.N.Y. Mar. 13, 2020), ECF No. 44 ("*Lovati* Mem.")); *see also* Ltr. from K. Yalowitz, counsel for Venezuela, to Judges Torres and Carter at 4, *Lovati v. Bolivarian Republic of Venezuela*, No. 1:19-cv-04796 (S.D.N.Y. July 31, 2019), ECF No. 9 ("*Lovati* Ltr.") ("It is the Republic's view … that the only available method of service currently available against the Republic is set forth in 28 U.S.C. § 1608(a)(4)."). The Court ordered that service method. ECF No. 16; *see also* ECF No. 72 at 3-4 ("Defendant has formally stated that service under §§ 1608(a)(1), (2), and (3) is unavailable, and 'the only method of service currently available against [Venezuela] is set forth in

§ 1608(a)(4)' …. Accordingly, service on Defendant … was proper pursuant to § 1608(a)(4) ….”). With the Court's authorization, Plaintiffs filed a Second Amended Complaint that the Clerk then transmitted (along with a complete, translated service package) to the U.S. Department of State per § 1608(a)(4). ECF Nos. 23 to 25. Included with their complaint were copies of letters by Plaintiffs demanding repayment of the bonds sent by international courier to the Ministerio de Finanzas de la Republica Bolivariana de Venezuela and the Banco Central de Venezuela in Caracas, and copies of the same sent by hand delivery to the Venezuelan Embassy in Washington, D.C. ECF No. 24-4 to 24-10.

As the State Department confirmed, service on Venezuela was completed on May 21, 2021, and the Court acknowledged completion of service under the FSIA. ECF Nos. 30 to 32. In addition, Plaintiffs went beyond any statutory obligations and repeatedly provided notice to counsel representing Venezuela in other matters in this Court, including notice of the original complaint, the FSIA service process, and subsequent amendments. *See* Bowker Decl. Exs. A-H (reflecting emails from Plaintiffs' counsel to counsel who appeared and actively litigated on behalf of Venezuela in the related case *Pharo Gaia Fund Ltd. v. Bolivarian Republic of Venezuela*, No. 1:19-cv-03123 (S.D.N.Y.) (Torres, J.) (“*Pharo Gaia*”)); *see also Pharo Gaia*, ECF Nos. 1, 9 (noting initial appearances of said counsel by April 2019); *see also Lovati v. Bolivarian Republic of Venezuela*, No. 1:19-cv-04796 (S.D.N.Y.) (Carter, J.) (same counsel for Venezuela appearing on filings for Venezuela in 2019, 2020, 2021, 2022, 2023; and then again in May 2026, when they moved to withdraw).

Plaintiffs filed their motion for default judgment in December 2022. ECF No. 65. Plaintiffs' default submission included the service record, pleadings, governing instruments, account records, record-holder authorizations, and sworn declarations. ECF Nos. 65 to 67; Bowker Decl., ECF No. 66 at 2 ¶¶ 1-3, ¶¶ 4-24. Plaintiffs authenticated the instruments and traced service, ownership, authority, liability, and damages. Bowker Decl., ECF No. 66 ¶¶ 25-

33, 35-283; Robinson Decl., ECF No. 67 ¶¶ 1-90. Plaintiffs supplied series-by-series proof of beneficial ownership, missed payments, maturity or acceleration, and unpaid principal and interest, all based on personal knowledge. Robinson Decl., ECF No. 67 ¶¶ 1-90. On July 5, 2023, on the fully developed evidentiary record, the Court granted Plaintiffs' motion for default judgment, holding that Plaintiffs had perfected service under the FSIA, established Venezuela's liability, and properly calculated their damages. ECF No. 72. The Court entered judgment on July 19, 2023; the Court later amended the judgment to add attorneys' fees and costs. ECF Nos. 76, 88, 89. The judgment totaled nearly $600 million, exclusive of attorneys' fees and costs. ECF No. 89.

The Clerk of Court mailed two copies of the default judgment to the Department of State for service of the judgment on Venezuela under §§ 1608(a)(4) and 1608(e). *See* ECF No. 77. On October 16, 2023, the Department of State confirmed to Plaintiffs that the default judgment had been transmitted to Venezuela on October 11, 2023. *See* ECF No. 86-1.

In October 2023, Plaintiffs moved this Court for relief that would allow them to pursue enforcement by attaching Venezuela's property in the United States. *See* ECF Nos. 84 to 86; *see also* ECF No. 90. The Court granted the motion, finding under 28 U.S.C. § 1610(c) that a reasonable period had elapsed after the judgment. ECF No. 91. The Clerk then issued a certification for registration of the amended judgment in another federal district where Venezuela has assets. ECF No. 94.

From start to finish, the Court's supervision of the service process, adjudication of the merits of the case, issuance of the judgment, and issuance of the certification of the judgment took more than three years to complete. *See* ECF Nos. 1 to 94. During that entire period, Venezuela ignored the process, never appeared, never submitted any filing, and never sought to be heard. Thereafter, Venezuela declined to timely appeal. Instead, as discussed below, it

opposed (unsuccessfully) Plaintiffs' efforts to register this Court's judgment in federal court in Delaware, where Venezuela has assets.

### B. Plaintiffs Registered This Court's Judgment In The U.S. District Court For The District Of Delaware, Where Venezuela Unsuccessfully Made Similar Arguments It Now Makes Here

Plaintiffs promptly registered this Court's judgment in the District of Delaware. *See Altana Credit Opportunities Fund SPC v. Bolivarian Republic of Venezuela*, No. 23-mc-00608-LPS (D. Del.), D.I. 1. There, Plaintiffs joined the ongoing *Crystallex* enforcement proceedings against Venezuela. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-00151-LPS (D. Del.) ("*Crystallex*"), D.I. 812. Venezuela appeared in those proceedings, where it sought unsuccessfully to oppose Plaintiffs' enforcement action. *See Crystallex*, D.I. 840 (Venezuela's opposition to Plaintiffs' motions, Jan. 8, 2024). There, Venezuela litigated for years against judgment creditors. *See, e.g.*, *Crystallex*, D.I. 183-184 (Rule 60(b) motion by Venezuela to vacate orders of attachment). Venezuela filed oppositions and joinders, contested writs of attachment, disputed the distribution of sale proceeds, and engaged in discovery and briefing on multiple contested issues. *See, e.g.*, *id.*; *Crystallex*, D.I. 840.

As to Plaintiffs specifically, Venezuela made arguments similar to those it makes here. In *Crystallex*, for example, Venezuela argued unsuccessfully that Plaintiffs failed to comply with FSIA service requirements. *Crystallex*, D.I. 840 at 7-10. Notably, however, Venezuela did not dispute that service was proper under § 1608(a)(4) and that Venezuela was in fact *served* with both the complaint and default judgment. *See id.* Rather, it argued only that the Department of State failed to properly *document* service of the default judgment. *See id.*; *Crystallex*, D.I. 865 at 9. There, as here, Venezuela also took aim at Plaintiffs' motives, accusing them of being "opportunistic investor[s] in distressed debt." *Crystallex*, D.I. 840 at 6. Although Venezuela chose to litigate in the District of Delaware, it chose not to appear here; and although it chose to oppose enforcement of this Court's judgment in Delaware, it chose not to move this Court to

vacate the underlying default judgment during the years that enforcement litigation was ongoing in Delaware. In Delaware, the court rejected Venezuela's arguments and granted Plaintiffs' motion for a writ of attachment. *See Crystallex*, D.I. 886 (Jan. 24, 2024). The record thus establishes that, contrary to Venezuela's representations here, Venezuela has long been aware of the Court's judgment for Plaintiffs, deliberately chose to attack the Court's judgment collaterally in out-of-district enforcement proceedings, and decided years ago not to challenge the judgment or seek vacatur in this Court.

### C. Venezuela's Motion, Filed In 2026, Seeks To Vacate The Court's Judgment Entered In 2023

After three years, Venezuela decided to bring the instant motion in this Court. It did so apparently because Plaintiffs are engaged in post-judgment discovery aimed at finding Venezuela's assets. ECF Nos. 98, 99. Only on September 30, 2026, did Venezuela make its first appearance in this Court by filing its motion to vacate. ECF Nos. 100, 101. It then filed a second brief correcting typographical errors and making other line edits, while advancing the same substantive arguments. ECF No. 102 ("Def. Mem."). Venezuela asks the Court to start all over, as if Plaintiffs had not already won a judgment on the merits following a thorough, multiyear adjudication in this Court. There is no basis in U.S. law for what Venezuela seeks, and Venezuela's motion offers none.

## LEGAL STANDARD

"Rule 60 governs motions to set aside default judgments." *Coney Island Auto Parts Unlimited, Inc. v. Burton*, 607 U.S. 155, 158 n.2 (2026). "'Since [Rule] 60(b) allows extraordinary relief, it is invoked only upon a showing of exceptional circumstances.'" *Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 190 (2d Cir. 2003); *see also Kemp v. United States*, 596 U.S. 528, 533 (2022) ("'[E]xtraordinary circumstances' must justify reopening."). The movant—Venezuela here—must move "within a reasonable time," Fed. R. Civ. P. 60(c)(1),

bears the "burden of proof," *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001), and "must 'present highly convincing evidence in support of vacatur,'" *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 53 (2d Cir. 2021) (alterations adopted). Rule 60(b) cannot be used to relieve a party of "'free, calculated, deliberate choices.'" *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 212 (2025); *see also Yousefzadeh v. Johnson & Johnson Consumer Inc.*, 184 F.4th 130, 162 (2d Cir. 2026).

Generally, the Second Circuit has explained,

> when a district court decides a motion to vacate a default judgment pursuant to the provisions of Rule 60(b), the court's determination must be guided by three principal factors: "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice."

*New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005) (alteration adopted). "Of these factors, willfulness carries the most weight." *Aquila Alpha LLC v. Ehrenberg (In re Orion HealthCorp., Inc.)*, 95 F.4th 98, 104 (2d Cir. 2024) (per curiam).

Moreover, to obtain relief under Rule 60(b)(6), a movant must further establish that "Rules 60(b)(1) through (b)(5) are inapplicable," and that "'extraordinary circumstances'" justify reopening. *Kemp*, 596 U.S. at 533. So, for example, "[w]here a party's Rule 60(b) motion is premised on grounds fairly classified as mistake, inadvertence, or neglect, relief under Rule 60(b)(6) is foreclosed" by the ability to obtain such relief under Rule 60(b)(1). *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012).

Rule 60(b)(4) permits vacatur when a judgment "is void." That is true "only in two situations: 'where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard.'" *SEC v. Romeril*, 15 F.4th 166, 171 (2d Cir. 2021). Under Rule 60(b)(4), "a judgment may be declared void for want of jurisdiction only when the court 'plainly usurped jurisdiction,'" *Herbert*, 341 F.3d at 190, *i.e.*, "only 'when there is a total want of jurisdiction and no arguable basis on which

the court could have rested a finding that it had jurisdiction,'" *Romeril*, 15 F.4th at 171 (alteration adopted). The standard is strict: "'A judgment is not void' … 'simply because it is or may have been erroneous.'" *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). The party seeking vacatur for lack of jurisdiction "must carry a heavy burden to merit vacatur." *Gater Assets*, 2 F.4th at 50.

## ARGUMENT

Venezuela's motion is meritless and should be denied. It makes a mockery of Rule 60(b)'s elements and comes nowhere close to carrying Venezuela's substantial burden as to each. First, Venezuela's default in these proceedings obviously was "willful." It chose to ignore these proceedings for years while it actively litigated in other U.S. courts. Second, Venezuela has no serious argument on the merits, which this Court decided in Plaintiffs' favor based on the irrefutable record that Venezuela issued the bonds held by Plaintiffs and then failed to pay the interest and principal that it owed to Plaintiffs on those bonds. Third, there would obviously be substantial prejudice to Plaintiffs if the judgment were vacated and they were forced to litigate the same issues all over again. Plaintiffs already have had to expend extraordinary time, energy, and resources pursuing Venezuela, which has refused to honor this Court's judgment and pay the debts that it plainly owes to Plaintiffs. Venezuela's untimely motion in this Court is an abuse of process that should be rejected.

### I. VENEZUELA CANNOT USE RULE 60(b)(6) TO UNDO ITS DELIBERATE DEFAULT AND YEARS OF DELAY

#### A. Venezuela Is Responsible For The Willful Default In This Court By Venezuela's Own Government

To deny a motion to vacate a judgment under Rule 60(b)(6), "'it is sufficient' to conclude 'that the defendant defaulted deliberately.'" *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 n.1, 187 (2d Cir. 2015) (per curiam); *see also Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996) (recognizing a higher

standard to vacate a default judgment under Rule 60(b) than under Rule 55(c)). The record here makes plain that Venezuela did just that.

It is irrefutable from the record evidence that Venezuela received actual notice of this litigation and opted not to appear. Venezuela makes baseless technical arguments with no grounding in law, but tellingly it does not dispute that—as this Court found (ECF No. 72 at 3-4)—diplomatic service on Venezuela was carried out in strict accordance with 28 U.S.C. § 1608(a)(4). Nor does Venezuela dispute that Plaintiffs went beyond those statutory requirements to provide additional actual notice to Venezuela by notifying its U.S. counsel of the proceedings in this Court. *See supra* p.5; Bowker Decl. Exs. A-H. As if that were not enough, Venezuela also was properly served with this Court's judgment by October 11, 2023, ECF No. 86-1, and *actively litigated against Plaintiffs* in Delaware to oppose enforcement of the judgment there, *see supra* pp.6-8. Venezuela, represented by sophisticated U.S. counsel, contested Plaintiffs' enforcement efforts and filed an opposition (unsuccessfully) raising arguments similar to those it makes here, *see supra* pp.7-8, without ever attempting to appear in this Court to vacate the judgment here.

The record thus establishes that Venezuela willfully chose not to appear in this Court to litigate the case at the outset, willfully chose not to appear in this Court to vacate the judgment after it was issued, and willfully chose not to timely appeal the judgment in the Second Circuit. Instead, it willfully (and unsuccessfully) chose to collaterally challenge the judgment during enforcement proceedings in Delaware, waited another two-plus years, and then appeared here for the first time to file a motion that omits material facts. These are precisely the kinds of calculated litigation choices that are fatal to any Rule 60(b)(6) motion. *See BLOM Bank*, 605 U.S. at 211-213; *Yousefzadeh*, 184 F.4th at 162. Venezuela's repeated reliance on *G&A Strategic Investments I LLC v. Petróleos de Venezuela, S.A.*, 2024 WL 4520067, at *3 (S.D.N.Y. Oct. 17, 2024) (cited at Def. Mem. 2, 7, 11, 13, 19, 21, 23), is entirely misplaced. There, PDVSA acted

within "four months" to challenge a default judgment. *Id.* Here, Venezuela sat on its hands for *three years* despite actual notice—including through enforcement proceedings where it unsuccessfully challenged the judgment.

More fundamentally, Venezuela's argument that a prior government was responsible for the default is frivolous under U.S. law. "Our law has long recognized that the legal position of a foreign state survives changes in its government. Thus, a foreign state's proprietary rights, and its causes of action in our courts, persist following a change in its form of government." *Republic of Iraq v. ABB AG*, 768 F.3d 145, 163-164 (2d Cir. 2014) (citing, *e.g.*, *The Sapphire*, 78 U.S. (11 Wall.) 164, 168 (1871)); *see also The Sapphire*, 78 U.S. (11 Wall.) at 168 ("The reigning Emperor, or National Assembly, or other actual person or party in power, is but the agent and representative of the national sovereignty. A change in such representative works no change in the national sovereignty or its rights."). Whatever Venezuela now may think of its own prior government, it is black-letter law in the United States that recognition by the President controls who may speak for a foreign State in a U.S. court. *Guaranty Tr. Co. of N.Y. v. United States*, 304 U.S. 126, 137-138 (1938). The existence of a new government does not erase Venezuela's state responsibility for acts of its prior government. Rather, a new government "is in privity with its predecessor." *Socialist Republic of Romania v. Wildenstein & Co.*, 147 F.R.D. 62, 66 (S.D.N.Y. 1993) (citing *Guaranty Tr. Co.*, 304 U.S. at 137; *The Sapphire*, 78 U.S. (11 Wall.) at 168). Accordingly, "when a foreign 'government changes, the nation remains, with rights and obligations unimpaired.'" *ABB*, 768 F.3d at 164; *see also OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157, 170 (3d Cir. 2023) ("Now, as before, 'rulers come and go; governments end and forms of government change; but sovereignty survives.'" (brackets omitted) (quoting *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 316 (1936))), *cert. denied*, 144 S. Ct. 549 (2024). This is true for "democratically elected governments" as well as for "other systems," including "when political systems are altered or

when the regime in power falls out of favor." *Wildenstein*, 147 F.R.D. at 66. "Such a change in government, or the fact that a former regime pursued a different litigation strategy than would the government currently in power, does not constitute an extraordinary event sufficient to support a Rule 60(b)(6) motion." *Id.* (denying Rule 60(b)(6) motion to vacate default judgment).

That settled rule, which Venezuela all but ignores, is fatal to Venezuela's motion. Venezuela's current administration cannot invoke the continuity and privileges of the sovereign while treating its previously recognized government as if it were a legal stranger for purposes of an adverse judgment. Venezuela "is not relieved of responsibility for the consequences of its litigation strategy merely because it is a nation-state whose government has changed." *Wildenstein*, 147 F.R.D. at 65.

Venezuela's passing attempt, in a footnote (Def. Mem. 10 n.6), to distinguish binding U.S. law falls woefully short of the candor required in this Court. Venezuela asserts (*id.*) that *ABB* and *Wildenstein* are "inapposite" because they involved "internal transitions within a single, continuously recognized state," while this case involves "a change in which government the United States recognized as capable of appearing." That is nonsense. *ABB* and *Wildenstein* are on point precisely because Venezuela's government, as recognized by the President, speaks and acts for the State of Venezuela. The reasoning of *ABB* and *Wildenstein* rests on the principle of State continuity, rather than the mechanics of a particular change of governments, and Venezuela points to nothing in either decision suggesting otherwise.

Venezuela's proposed rule—that state responsibility and privity principles go out the window whenever a U.S. President recognizes a new government—is directly contrary to settled law. And there are yet more examples of courts rejecting Venezuela's position. In *United States v. National City Bank of New York*, 90 F. Supp. 448 (S.D.N.Y. 1950), the court held that, even after the U.S. President recognized the Soviet government in Russia, the U.S.S.R. could not escape its sovereign debts on Russian treasury notes issued by the pre-Soviet regime: "[T]he

State of Russia was the obligor on the Notes before the revolution and … the State of Russia continued as the obligor after the revolution. The regime in power changed. The state, as a continuing personality, persisted." *Id.* at 452 (citing, *e.g.*, *Guaranty Tr. Co.* and *The Sapphire*). Likewise, in *Jackson v. People's Republic of China*, 550 F. Supp. 869 (N.D. Ala. 1982), the court held that the People's Republic of China could not escape China's debt for bonds issued by the Imperial Chinese Government in 1911, *id.* at 872—notwithstanding that the Imperial Chinese Government had fallen in 1912, *see id.* at 871, and notwithstanding that the United States did not recognize the PRC as China's governing power until nearly six decades after that, *see Address by President Carter to the Nation on Diplomatic Relations Between the United States and the People's Republic of China* (Dec. 15, 1978), https://perma.cc/YG9W-ERT7. The continuity principle and the long line of U.S. cases reaffirming it are fatal to Venezuela's argument that the circumstances here are so "extraordinary" as to undo a final and binding judgment of this Court under Rule 60(b)(6).

### B. Venezuela Fails To Offer Any Meritorious Defense

To prevail under Rule 60(b)(6), Venezuela must do more than deny liability. It must "'present evidence of facts that, if proven at trial, would constitute a complete defense.'" *Green*, 420 F.3d at 109. Conclusory assertions and speculation do not suffice. *Id.*; *see also Bricklayers*, 779 F.3d at 187. Each of Venezuela's asserted defenses is meritless, which independently dooms Venezuela's motion under Rule 60(b)(6).

**Champerty.** Venezuela's champerty defense ignores the New York rule that it does not apply where, as here, the "aggregate purchase price" of the bonds is "at least five hundred thousand dollars." N.Y. Judiciary Law § 489(2); *see Fulton Holding Grp., LLC v. Lindoff*, 87 N.Y.S.3d 66, 70 (2d Dep't 2018); Robinson Decl. ¶ 2. Venezuela nowhere even mentions this rule—despite the fact that the case it invokes, *G&A Strategic Investments*, 2024 WL 4520067, at *3 (cited at Def. Mem. 13), subsequently found that the champerty statute did not apply for this

reason, *G&A Strategic Invs. I LLC v. Petróleos de Venez., S.A.*, 788 F. Supp. 3d 616, 627 (S.D.N.Y. 2025) ("[T]he Court agrees with the defendants that the champerty statute does not apply here because the 'aggregate purchase price' of the Notes was 'at least five hundred thousand dollars.'"), *appeal docketed*, No. 25-1789 (2d Cir. July 22, 2025).

Moreover, putting aside the monetary cap, the New York champerty statute applies only when the purchaser's "'primary purpose'" is to bring suit. *Justinian Cap. SPC v. WestLB AG*, 65 N.E.3d 1253, 1256 (N.Y. 2016); *see also Universal Inv. Advisory SA v. Bakrie Telecom PTE*, 62 N.Y.S.3d 1, 8 (1st Dep't 2017). That inquiry is transaction-specific and turns on the purchaser's purpose at the time of acquisition. *See, e.g.*, *IKB Int'l S.A. v. Morgan Stanley*, 207 N.Y.S.3d 488, 491-492 (1st Dep't 2024). Here, Venezuela offers nothing but speculation regarding Plaintiffs' legitimate investment purpose in purchasing the bonds, which obviously does not suffice to meet Venezuela's burden. Venezuela's argument also ignores that Venezuela itself promised full payment of the bonds, pledged its full faith and credit, waived immunity, consented to New York jurisdiction, and agreed to specified enforcement costs. Bowker Decl., ECF No. 66 ¶¶ 86-91.

Venezuela's reliance on other Venezuelan-debt cases (Def. Mem. 14) does not, and cannot, fill the evidentiary gap. *Zahn v. Bolivarian Republic of Venezuela* denied class certification because the named plaintiff's specific circumstances suggested a primary purpose of litigation, including that she "stated that bringing a class action was one of the reasons that she bought the … Bonds when she did." 2026 WL 2185589, at *5-6 (S.D.N.Y. July 29, 2026). That, of course, does nothing to establish *Plaintiffs'* supposedly champertous purpose here. Nor does *Syracuse Mountains Corp. v. Petróleos de Venezuela S.A.*, a summary-judgment decision where the plaintiff's general manager admitted in a deposition that his company was formed "'just for the purpose of th[e] litigation.'" 2024 WL 3637997, at *4 (S.D.N.Y. Aug. 1, 2024). Finally, Venezuela's passing references (Def. Mem. 3, 14) to *IlliquidX* are even further afield: that was a trade-secrets dispute in a foreign jurisdiction about *IlliquidX's* alleged business

secrets—*not* Plaintiffs' purposes in buying the bonds at issue here. Judgment of 10 July 2026, *IlliquidX Ltd. v. Altana Wealth*, [2026] EWCA Civ 874, [8]-[12] (appeal taken from Eng.), https://perma.cc/G633-7SMZ. In any case, New York champerty rules do not bar the purchase of bonds that may require litigation to enforce. *Tr. for Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*, 918 N.E.2d 889, 894 (N.Y. 2009) ("New York cases agree that if a party acquires a debt instrument for the purpose of enforcing it, that is not champerty simply because the party intends to do so by litigation."); *accord Elliott Assocs., L.P. v. Banco de la Nacion*, 194 F.3d 363, 371, 378-381 (2d Cir. 1999) (reversing champerty dismissal of action to enforce sovereign debt). In short, none of Venezuela's cited cases support its champerty arguments—let alone serve as evidence of any champertous purpose—which fail on two independent grounds.

**Standing and record-holder authorization.** Venezuela's other challenges are similarly speculative and have no support in the record. As this Court rightly recognized, the record is replete with evidence supporting Plaintiffs' standing. ECF No. 72 at 5. That includes ample proof of Plaintiffs' beneficial ownership, authority, and injury: Bank of New York Mellon identified the positions; Cede & Co. and Deutsche Bank supplied record-holder authorizations to the extent they were necessary; and Depository Trust Co. ("DTC") confirmed the positions, including the 12.75% 2022 Bonds (which Venezuela objects to separately, *see infra* p.17). Bowker Decl., ECF No. 66 at 2 ¶ 1, ¶¶ 22-24, 110 & n.8; ECF No. 66-11 (Bank of New York Mellon account statement); ECF Nos. 66-32 to 66-34 (authorization letters); Robinson Decl., ECF No. 67 ¶¶ 1, 3, 10, 17, 24, 29, 34, 42, 47, 52, 57, 62, 70, 77, 84 (beneficial ownership of each bond). Venezuela identifies no contrary evidence that would negate any of these three bases for standing.

Venezuela's suggestion (Def. Mem. 15) that Altana Funds Ltd. Cayman is not authorized to sue is distraction. As this Court recognized (ECF No. 72 at 1), and as Plaintiffs made clear in

their submissions to the Court, Altana Funds Ltd. Cayman acted only as investment adviser and manager, does not beneficially hold the bonds, and sought recovery for amounts owed to its advisees, Altana Credit Opportunities Fund SPC and Altana Credit Opportunities Fund 1 SP. Bowker Decl., ECF No. 66 at 2 ¶ 1 n.3; Robinson Decl., ECF No. 67 ¶ 1. That explains why the Court did not award damages separately or solely to Altana Funds Ltd. Cayman and instead correctly issued the judgment in one amount to all three Altana plaintiffs.

And Venezuela's other claim, that there was no express authorization to sue for the 12.75% 2022 Bonds (Def. Mem. 15-16), fares no better. To the extent any authorization was required, Altana did receive express authorization to sue—as this Court already found. ECF No. 72 at 5 (finding that Plaintiffs "have contractual standing to bring this action and have authorization from the record holders of the Bonds to bring this action"). Cede & Co.'s November 2022 letter authorized suit to enforce bonds that were credited to Altana's DTC account and of which Altana is the beneficial owner. Bowker Decl., ECF No. 66 ¶¶ 110-111; ECF No. 66-32. The following month, DTC confirmed Altana's position and provided an updated appendix of the Venezuelan bonds in its account, which included the 12.75% bond series. ECF No. 66-34; *see also* Robinson Decl., ECF No. 67 ¶ 17. Thus, as Plaintiffs explained in their default judgment submission to this Court, they "underst[oo]d the December letter, with its updated Appendix A, to relate back to the November letter to provide authorization on the [12.75% 2022 Bonds] as well." Bowker Decl., ECF No. 66 ¶ 110 n.8.[1]

[1] Plaintiffs have established authorization, as this Court already found. ECF No. 72 at 5. But it bears emphasis that Venezuela has not even identified any language in the 2022 bond instruments that would prevent beneficial owners from enforcing the defaulted bonds. *Cf. Fontana v. Republic of Argentina*, 415 F.3d 238, 242 (2d Cir. 2005) (reserving the issue of whether the text of Argentina's bond instruments prevented beneficial owners from suing). Nor does Venezuela identify any language preventing DTC from authorizing Plaintiffs' suit as it did in its December 2022 confirmation letter, *see id.* ("Argentina concedes in its brief that the plaintiffs 'would have been able to bring suit … if authorized by DTC or Cede.'"), or even at this stage of litigation, *see Etevob v. Republic of Argentina*, 471 F. Supp. 2d 432, 443 (S.D.N.Y. 2007) ("[A]uthorization [to sue] may be granted subsequent to the filing of a lawsuit"), *aff'd sub*

**Section 1608(e).** Plaintiffs' filings in this matter were more than adequate to show they were entitled to a default judgment, contrary to Venezuela's baseless speculation (Def. Mem. 16-17). Plaintiffs combined the bonds' governing instruments and authorization records with a complete catalogue of service, ownership, and liability. Bowker Decl., ECF No. 66 at 2 ¶¶ 1-3, ¶¶ 4-24, 26-33, 35-235 & n.8; ECF No. 66-11; ECF Nos. 66-32 to 66-34; Robinson Decl., ECF No. 67 ¶¶ 1-90. Each damages category was supported by series-by-series proof of positions, payment dates, accruals, maturity or acceleration, and unpaid amounts. Bowker Decl., ECF No. 66 ¶¶ 236-283. Venezuela identifies no actual failure in Plaintiffs' service under 28 U.S.C. § 1608(a) or (e). Nor does it identify any overlooked payment, overstated position, unsupported series, or competing damages calculation. Its hope that discovery may uncover one does not come close to warranting a reopening of the long-settled judgment.

*Neuhauser v. Bolivarian Republic of Venezuela*, on which Venezuela relies (Def. Mem. 12, 17, 22), refutes Venezuela's argument. 2023 WL 4350614 (S.D.N.Y. July 3, 2023). There, this Court denied default judgment because the claimant had not submitted documentary or affidavit evidence of authorization—in fact, the submission did not contain *any* evidence of authorization from record holders. *See id.* at *3. Here, by contrast, Plaintiffs submitted authorization materials, which the Court found sufficient. ECF No. 72 at 5. *Neuhauser* does not authorize a losing party to relitigate the Court's evidentiary judgment years later with speculation and conjecture alone.

**Transfer restrictions.** Venezuela's transfer argument (Def. Mem. 17-18) also fails. Its motion merely points to transfer procedures in Section 6 of the 2001 Fiscal Agency Agreement, without offering any evidence of an unauthorized transfer. *Id.* at 18. The burden is on

---

*nom. Mazzini v. Republic of Argentina*, 282 F. App'x 907 (2d Cir. 2008) (summary order); *see also Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires*, 415 F.3d 242, 245 (2d Cir. 2005).

Venezuela to present *evidence* of a complete defense, not merely point to a rule and offer a *theoretical* possibility of a defense. *See Bricklayers*, 779 F.3d at 187. Venezuela fails to offer the necessary evidence of any transfer, omitted certificate, transferor, date, or instruction that allegedly failed to comply with the Agreement. *See* ECF No. 66-30 at 14-19. Nor does it analyze the particular language governing any identified transaction or show that a procedural defect would make the payment obligation unenforceable by the beneficial owner against Venezuela.

**U.S.-Venezuelan sanctions.** Venezuela continues grasping at straws when it asks for discovery (Def. Mem. 18-19) into Plaintiffs' ownership structure to explore imagined sanctions violations. This too is frivolous—based on *no* evidence, *no* valid legal theory, and *no* law. Instead, Venezuela offers nothing more than its own speculation about what discovery could show. It points to one plaintiff's Cayman domicile, a purported—but demonstrably false[2]—U.S. connection of an Altana principal, and the possibility that unidentified investors were subject to sanctions restrictions. *Id.* Tellingly, Venezuela identifies no blocked investor, sanctioned owner, prohibited acquisition, transaction involving a United States person, rejected license, or OFAC determination concerning Plaintiffs. Nor does Venezuela identify any regulation declaring the bonds void, transferring ownership back to Venezuela, or extinguishing Venezuela's debt because of a purchaser-level violation.

Venezuela cites OFAC rules concerning blocked persons and the 50 Percent Rule, but those are irrelevant without evidence that a blocked person held the requisite ownership interest.

---

[2] In its haste to invoke sanctions law, Venezuela gets basic facts wrong. Venezuela insists (Def. Mem. 18) that Altana's founder is "'based out of [the] United States,'" citing some unattributed, unsupported statement on a website that has since been corrected to "based out of Monaco." Robinson Decl. ¶ 4. Contrary to Venezuela's unfounded speculation, Altana's founder is a foreign citizen who has never been a resident of the United States, let alone been "based out of the United States." *Id.* ¶ 3.

Rule 60 does not authorize vacatur based on speculation, hypotheticals, and imaginary violations of irrelevant rules. Venezuela's suggestions to the contrary are specious.

Venezuela's failure to point to a shred of evidence of any defense, much less a complete defense, is fatal to its motion. Vacatur would not permit Venezuela to present an identified defense that was previously unavailable. Far from it. It would merely allow Venezuela to continue avoiding responsibility for its substantial debt to Plaintiffs. Rule 60 does not permit this type of gameplaying with sovereign debt. Where, as here, the movant cannot identify evidence that would change the outcome, reopening the case is impermissible because it would impose substantial prejudice on the judgment creditor without any equitable justification grounded on the merits.

### C. Vacatur Would Reward Venezuela's Delay And Prejudice Plaintiffs In A Finite-Asset Enforcement Process

Because Venezuela's default was willful, and because, independently, Venezuela "fail[s] to establish a meritorious defense," the Court can and should deny the motion for vacatur under Rule 60(b)(6), as "the absence of such a defense is sufficient to support the district court's denial of" such a motion. *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 174 (2d Cir. 2004). Still, the record reflects that vacatur would cause Plaintiffs substantial prejudice, which provides yet another independent basis for rejecting Venezuela's motion.

Plaintiffs have spent six years obtaining, registering, and seeking to enforce their judgment, while other judgment creditors continue to litigate to enforce their respective judgments against a finite and insufficient pool of Venezuelan assets. *Supra* pp.3-8. Vacatur would require Plaintiffs to start things over from scratch—forcing them to establish once more what this Court already adjudicated. Obvious prejudice would result, not merely from the extraordinary burden and cost of litigating the same issues all over again, but also from losing the opportunity to pursue enforcement of this Court's judgment while holders of other judgments

continue to proceed with their enforcement efforts. Such prejudice cannot be cured fully by a later merits-judgment. *Cf. Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 87 (2d Cir. 1996) (irreparable harm exists where judgment becomes "'uncollectible'" because of debtor's efforts to frustrate enforcement).

Finality is a core feature of litigating to judgment in U.S. court. And finality has extra force where, as here, the challenged ruling was both judicially supervised and appealable. Rule 60's extraordinary remedy must be balanced against the vital interest in final judgments. *See BLOM Bank*, 605 U.S. at 213 ("'This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved.'"). The balance here tips entirely in favor of Plaintiffs and against Venezuela, which chose to ignore the proceedings in this Court while litigating the same or similar issues in other U.S. courts.

## II. VENEZUELA'S SECONDARY RULE 60(b)(4) ARGUMENT IS MERITLESS

Venezuela's backup argument—that the judgment must be vacated under Rule 60(b)(4) for want of jurisdiction (Def. Mem. 22-23)—is hardly worthy of response. Venezuela consented to U.S. jurisdiction when it issued these bonds, waived any conceivable jurisdictional defenses by choosing to default, and at the same time affirmatively litigated in U.S. courts regarding the same or similar issues it now raises here. It now claims that Plaintiffs failed to serve process under 28 U.S.C. § 1608(a), but this Court already found otherwise. In accordance with this Court's express authorization and finding, Plaintiffs perfected service on Venezuela in strict compliance with § 1608(a)(4). *See* ECF Nos. 16, 23. Venezuela's argument (Def. Mem. 22) that service should have been effected under § 1608(a)(3) instead is disingenuous and wrong. As Venezuela itself—repeatedly, expressly, and unequivocally—represented in this Court, and as this Court rightly decided, § 1608(a)(4) was the *only* acceptable method of FSIA service.

The provision Venezuela now invokes, § 1608(a)(3), allows service "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the

official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." 28 U.S.C. § 1608(a)(3). But as Venezuela itself previously represented both to this Court and to Judge Carter: "It is the Republic's view … that the only available method of service currently available against the Republic is set forth in 28 U.S.C. § 1608(a)(4)." *Lovati* Ltr. 4; *see also Lovati* Mem. 17; ECF No. 72 at 4. Indeed, as this Court previously recognized, Venezuela "expressly objected to service by mail when it acceded to the Hague Convention." Order at 2, *Casa Express Corp. v. Bolivarian Republic of Venezuela*, No. 18-cv-11940-AT (S.D.N.Y. Apr. 3, 2019), Dkt. 22. Thus, service under subsection (3) was "'categorically unavailable.'" *Id.*

Diplomatic service under § 1608(a)(4)—perfected here—requires "sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services." 28 U.S.C. § 1608(a)(4). The Department of State then "transmit[s] one copy of the papers through diplomatic channels to the foreign state and … send[s] to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted." *Id.* That is precisely what occurred. *See* ECF Nos. 23, 25 to 32. And Venezuela does not claim otherwise.

Venezuela's only argument is that, somehow, its "objection to service by postal channels" under the Hague Convention applies only to attempts to serve process under 28 U.S.C. § 1608(a)(2), and not § 1608(a)(3). Def. Mem. 22. That is false, as evidenced by Venezuela's own representations that U.S. service on Venezuela can be accomplished only through diplomatic channels under § 1608(a)(4), as the Court also correctly concluded in this case. ECF No. 72 at 4.

Nor is there any merit to Venezuela's passing argument that claims following the Second Amended Complaint or regarding one particular bond series, the 7.00% 2018 Bonds, somehow warrant vacatur in part. *See* Def. Mem. 23-24. As Venezuela describes it, such claims required additional service under Rule 5(a)(2). This is wrong. Service of later complaints, including the Sixth Amended Complaint with the additional bond series, was not required because the substantive claims—for breach of contract—were the same as in the prior complaints. And this issue has already been decided by this Court against Venezuela. As the Court found: "Because Defendant was served with the Second Amended Complaint and is in default … Plaintiffs are not required to serve Defendant with the Sixth Amended Complaint, which is substantially similar to the Second, Third, Fourth, and Fifth Amended Complaints." ECF No. 61 (citing Fed. R. Civ. P. 5(a)(1)(B), (2)). That ruling is fatal to Venezuela's position—which is an (incorrect) claim of legal error disguised as a jurisdictional argument. *See Romeril*, 15 F.4th at 171.

### III. VENEZUELA'S MOTION IS UNTIMELY BY YEARS

Rule 60(c)(1) requires every Rule 60(b) motion to be filed within a reasonable time, *Coney Island*, 607 U.S. at 162—not, as here, *three years* after a final judgment, *see Kellogg v. Strack*, 269 F.3d 100, 104 (2d Cir. 2001) ("[T]wenty-six months … constitutes a patently unreasonable delay absent mitigating circumstances."); *SEC v. Bronson*, 602 F. Supp. 3d 599, 610 (S.D.N.Y. 2022) ("The Second Circuit has found delays as short as 18 months unreasonable and thus untimely."); *Wildenstein*, 147 F.R.D. at 65 (citing cases holding one- and two-year delays unreasonable).

Here, Venezuela's extraordinary delay is "patently unreasonable," *Kellogg*, 269 F.3d at 104, because it had actual notice of the suit, did nothing for years, litigated the same or similar issues in other courts, and chose not to appear in this Court until it was far too late. Specifically, the Department of State served process on Venezuela on May 21, 2021. ECF No. 31-1. The proceedings commenced 60 days thereafter and concluded when the Court entered judgment on

July 19, 2023. ECF No. 76; *see also* ECF Nos. 88, 89 (amending the judgment on November 16, 2023, solely to add attorneys' fees and costs). Plaintiffs subsequently obtained relief under § 1610(c) and the Court certified the judgment to be registered in another district. ECF Nos. 91, 94. Venezuela sat on its hands for *this entire period*—but while litigating elsewhere, including a collateral attack on Plaintiffs' judgment in the District of Delaware. *Supra* pp.7-8. Venezuela did not file its motion to vacate in this Court until September 30, 2026. ECF Nos. 100, 101. The docket thus reflects over three years between first entry of judgment and the motion to vacate, and more than five years between service of process of the action and the motion.

Venezuela's purported excuse for the delay—that it could not act in this Court while the prior government was in power (Def. Mem. 21)—is false. The truth is that Venezuela could actively litigate against Plaintiffs during this period, and zealously did so in the Delaware proceedings. *Supra* pp.7-8. The June 2026 earthquakes in Venezuela were a tragedy (Def. Mem. 21), but they have nothing to do with Venezuela's choice to refuse to appear in this Court at any time in the previous *three-plus years*. Venezuela's contrary assertion demonstrates a lack of candor that infects its entire motion. Venezuela's willful decisions not to appear in these proceedings at any time for over three years have consequences under U.S. law, one of which is a final and binding judgment that cannot be reopened under Rule 60.

## IV. THE COURT SHOULD DENY A STAY THAT WOULD REWARD VENEZUELA'S DELAY AND JEOPARDIZE PLAINTIFFS' ENFORCEMENT POSITION

Venezuela's stay request (Def. Mem. 24-25) proceeds from a misleading premise: "allowing execution against the Republic's property to proceed … would risk irreparable disruption to sovereign assets." But as Venezuela knows well—notwithstanding its representations to the Court—there is no such risk. Execution would require OFAC approval, which has not been granted. What Venezuela actually seeks is to prevent Plaintiffs from pursuing post-judgment discovery and attachment-related efforts. *See* ECF Nos. 98, 99. In all

events, Venezuela's stay request should be denied. For all the same reasons discussed above and more, Venezuela has not come close to carrying its heavy burden. *See Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936).

In weighing whether to stay its own proceedings, the Court considers (1) Plaintiffs' private interests in proceeding expeditiously versus the prejudice they will experience if delayed; (2) Venezuela's private interests and burdens; (3) the Court's interests; (4) third parties' interests; and (5) the public's interest. *Casa Express Corp. ex rel. Casa Express Tr. v. Bolivarian Republic of Venezuela*, 492 F. Supp. 3d 222, 227 (S.D.N.Y. 2020) (denying Venezuela's stay request). These factors tip sharply in Plaintiffs' favor. Plaintiffs' private interests would be prejudiced by yet more delay as a result of Venezuela's conduct. And delay will continue to thwart Plaintiffs' efforts to pursue a limited pool of assets sought by other judgment creditors. *See supra* pp.7-8. The Court's interest is not advanced by a stay because no proceedings are before it other than a meritless motion to vacate. And to the extent they have any bearing here, third parties' interests also would not be advanced by a stay. Indeed, other judgment creditors would be harmed if Venezuela's delay tactics were encouraged—in spite of meritless legal arguments and misrepresentations of fact. *See supra* §§ I-II. The "public interest in finality" further weighs against a stay. *Barretta v. Wells Fargo Bank, N.A.*, 693 F. App'x 26, 28 (2d Cir. 2017) (summary order) (affirming denial of stay).

Against all of that, there is only Venezuela's self-interest in preventing Plaintiffs from discovering the location of its assets. Venezuela has shown an uncanny ability to avoid paying its debts, such that judgment creditors like Plaintiffs are forced to continue spending resources in pursuit of Venezuela's debt years after filing suit and obtaining a judgment. It is baseless for Venezuela to contend that it would be harmed at all—much less irreparably—by a third party identifying Venezuela's U.S.-based assets to Plaintiffs under a protective order and confidentiality agreement, or by any further attachment-related efforts.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Venezuela's motion to vacate and its request for a stay. The motion identifies no extraordinary circumstances supported by competent evidence that could possibly excuse more than three years of inaction, offers no evidence of a meritorious defense, and ignores the substantial equities that weigh entirely in favor of Plaintiffs. Nor does Venezuela identify any jurisdictional defect or other basis to justify reopening a judgment entered by this Court more than three years ago. The judgment should remain firmly in place.

Dated: October 14, 2026

Respectfully submitted.

*/s/* David W. Bowker

David W. Bowker
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6558
david.bowker@wilmerhale.com
*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMIT

I, David W. Bowker, hereby certify that the foregoing document complies with the word-count limit set forth in the Court's Individual Rule III.D because it contains 8,664 words, excluding the caption, the table of contents, the table of authorities, the signature block, and this certificate. In making this calculation, I have relied on the word count of the word-processing system used to prepare the document.

*/s/* David W. Bowker

David W. Bowker
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6558
david.bowker@wilmerhale.com
*Counsel for Plaintiffs*