GT GreenbergTraurig

Hal S. Shaftel
212.801.9200
shaftelh@gtlaw.com

October 27, 2026

**VIA ECF**

The Honorable Analisa Torres
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

Re: ***Altana Credit Opportunities Fund et al. v. The Bolivarian Republic of Venezuela,* Case No. 20-cv-08402-AT (S.D.N.Y.) [rel. No. 1:19-cv-3123-AT (S.D.N.Y.)]**

Dear Judge Torres:

We write on behalf of Defendant the Bolivarian Republic of Venezuela (the "Republic") pursuant to Rule III(A)(ii) of Your Honor's Individual Practices in opposition to Plaintiffs' October 20, 2026 pre-motion letter, ECF No. 110. Plaintiffs seek leave to move on an expedited basis to attach funds blocked at non-party JPMorgan Chase Bank, N.A. ("JPMCB") on the theory that those funds are the property of Petróleos de Venezuela, S.A. ("PDVSA") as the Republic's purported alter ego. The Court should deny leave; the motion is both premature and futile.

**A Stay Is Warranted**. Plaintiffs' proposed attachment is premised on the same default judgment that is the subject of the Republic's sub judice motion to vacate and for a stay. (ECF No. 100.) If the Republic succeeds, there will be no judgment to enforce, and any ruling on the Plaintiff's motion will have wasted judicial resources and may conflict with the vacatur decision. Deferral costs Plaintiffs nothing. As they acknowledge, any attachment "becomes effective only upon a specific . . . license" from the Office of Foreign Assets Control ("OFAC") that has not issued and that Plaintiffs have not sought. (ECF No. 110 at 4; *see* ECF No. 103 at 24.) With no assets capable of leaving the jurisdiction, waiting causes no prejudice and a stay should be issued.

**Neither the Republic nor PDVSA Have An Attachable Interest In The Blocked Funds.** Property may be attached and used to satisfy a money judgment only if it "could be assigned or transferred" and the judgment debtor holds "a present or future right or interest" in it. N.Y. CPLR 501(b); *id.* 6202 (applicable through Fed. R. Civ. P. 64 and 69(a)). Thus, before permitting attachment, a court must find that the debtor's interest satisfies these criteria. Here, there is no allegation that the Republic has any interest in the blocked funds.

As to PDVSA, its supposed interest is not merely unproven but foreclosed. Plaintiffs implicitly acknowledge the blocked cash as "midstream electronic funds transfer[s]" held at an "intermediary bank." (ECF No. 110 at 3.) While the record does not identify the entity that transmitted these funds to JPMCB, it reflects payments while JPMCB served as an intermediary.

Under settled Second Circuit law, "the only entity with a property interest in the stopped EFT is the entity that passed the EFT on to the bank where it presently rests"; a judgment debtor therefore has no attachable interest in a midstream EFT held at an intermediary bank unless it "transmitted the EFT directly to the bank where the EFT is held pursuant to the block." *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1002 (2d Cir. 2014); *Doe v. JPMorgan Chase Bank, N.A.*, 899 F.3d 152, 156-57 (2d Cir. 2018). Plaintiffs do not even allege that PDVSA transmitted any of these funds to JPMCB so PDVSA has no attachable interest in them.[1]

**PDVSA's Sanctions Designation Does Not Establish An Attachable Interest.** Plaintiffs rely on a third-party OFAC report (ECF No. 110 at 2), but that document does not supply what the attachment cases require. A "Sanctions Target" designation reflects only PDVSA's status under the sanctions program. *See Paradissiotis v. United States*, 304 F.3d 1271, 1273 (Fed. Cir. 2002). OFAC defines a blockable "interest" to reach "an interest of any nature whatsoever, direct or indirect," *Doe*, 899 F.3d at 157 n.4, 159-60; *Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*, 609 F.3d 111, 120 (2d Cir. 2010) (citation omitted), but that expansive regulatory definition is not the attachable property interest the CPLR requires. Indeed, the report lists several of PDVSA's counterparties, rather than PDVSA itself, in the "Owner of Property" field. (ECF No. 110 at 2-3.) Plaintiffs identify nothing in their description of the JPMCB report that indicates the attachable property interest the CPLR requires.

**The Court Lacks Jurisdiction Over PDVSA.** Even if the funds belonged to PDVSA, PDVSA is not before the Court. As an alleged instrumentality of a foreign state, PDVSA is presumptively a separate juridical entity. *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba* (*Bancec*), 462 U.S. 611, 626-28 (1983); *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 55 (2d Cir. 2021). A creditor may not reach a non-party instrumentality's assets without first establishing a separate jurisdictional basis over the instrumentality, because such a claim "is ultimately an attempt to 'establish liability directly on the part of a new party,'" and "[u]nder *Peacock*, ancillary jurisdiction cannot extend to this type of claim." *Peterson v. Bank Markazi*, 121 F.4th 983, 1000 (2d Cir. 2024) (quoting *Peacock v. Thomas*, 516 U.S. 349, 357 (1996)). As a separate juridical person, PDVSA is also entitled to "protection from the exercise of personal jurisdiction under the Due Process Clause." *Gater*, 2 F.4th at 49.

To establish subject-matter and personal jurisdiction over PDVSA, the Foreign Sovereign Immunities Act ("FSIA") requires Plaintiffs to show (1) a 28 U.S.C. § 1610 exception to PDVSA's presumptive immunity from attachment and execution (*see* § 1609); (2) valid service under § 1608(b) (*see* § 1330(b)); and (3) a basis for personal jurisdiction, through either PVDSA's minimum contacts with the forum (as Due Process requires) or its alter ego status under the limited circumstances *Bancec* permits. *Gater*, 2 F.4th at 64–66. Plaintiffs can show none of these.

[1] Plaintiffs dismiss those decisions as "turnover" cases (ECF No. 110 at 3), but that is an irrelevant distinction here. Turnover and attachment share the same prerequisite: the debtor must have an attachable interest in the property. *Doe*, 899 F.3d at 157.

*First*, because Plaintiffs seek PDVSA's alleged property as the Republic's purported alter ego and thus treat it as the Republic's property, they must establish the exception for a foreign state's property, 28 U.S.C. § 1610(a), rather than the separate provision for an instrumentality's own property, § 1610(b). *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 473 (2d Cir. 2007); *see Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 415-16 (D. Del. 2018) (applying § 1610(a) where a creditor sought PDVSA's property as the Republic's alter ego), *aff'd*, 932 F.3d 126 (3d Cir. 2019). Every exception under Section 1610(a), including waiver, reaches only property "used for a commercial activity in the United States," "at the time the writ of attachment or execution is issued." *Aurelius Cap. Partners, LP v. Republic of Argentina*, 584 F.3d 120, 130 (2d Cir. 2009). That the property "'will be used' or 'could potentially be used'" commercially nor the funds' commercial origin suffices. *Id*. Funds frozen in a blocked account since 2019 are not being "used" for anything (and are thus already being "preserved"), and Plaintiffs' contention that the funds "arose from" PDVSA's oil-trade and vendor transactions (ECF No. 110 at 3) describes their origin, not their use. Thus, Plaintiffs cannot make the required showing for these specific funds.

*Second*, Plaintiffs have not served PDVSA under § 1608(b), and their proposal merely to "serve" the Republic's counsel (ECF No. 110 at 4) is no substitute. Undersigned counsel is not authorized to accept service for PDVSA.

*Third*, Plaintiffs cannot rely on the Republic's purported waiver of immunity to demonstrate alter ego. The bond documents' waiver, if enforceable, binds the Republic alone and cannot be imputed to PDVSA. *See EM Ltd. v. Banco Cent. de la República Argentina*, 800 F.3d 78, 91-96 (2d Cir. 2015). Plaintiffs cite no Second Circuit decision permitting a creditor to reach an instrumentality's assets as a sovereign's alter ego and their out-of-circuit authority confirms the point: in *Crystallex*, PDVSA "intervened" and litigated its own defense before its assets were adjudicated. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 133 (3d Cir. 2019). The Second Circuit resolves the alter ego question through a fact-intensive *Bancec* inquiry "on a case-by-case basis" and has recently observed that it was "aware of no case . . . in which this Court has held that *Bancec* may be used to extend ancillary jurisdiction" from a judgment against a foreign sovereign to its instrumentality. *Peterson*, 121 F.4th at 1000. Simply arguing alter ego now would waste judicial resources.

**The Conditional Order Would Be Advisory And Intrusive.** The proposed order would decide contested ownership, immunity, and alter ego questions solely to support an OFAC license application that Plaintiffs have not made and that OFAC may never grant. A federal court may not issue such a ruling: "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citations omitted); *see Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (federal courts "do not render advisory opinions").

The proposed requirement that JPMCB give Plaintiffs advance notice of any OFAC "license, application, or other development" concerning the funds (ECF No. 110 at 4) also is

improper. It would let a private creditor monitor the Republic's confidential dealings with OFAC over blocked sovereign assets. Control of blocked foreign assets belongs to the U.S. Executive: Congress blocked such assets "to put control of foreign assets in the hands of the President," who holds them as a "bargaining chip," and the Supreme Court has refused to let "individual claimants" "minimize or wholly eliminate this bargaining chip through attachments, garnishments, or similar encumbrances." *Dames & Moore v. Regan*, 453 U.S. 654, 673 (1981). Requiring a bank to report the Republic's sanctions dealings to its litigation adversary would intrude on the Executive's control of foreign relations and disregard the comity owed to a foreign sovereign. *See Regan v. Wald*, 468 U.S. 222, 242 (1984) (matters relating to the conduct of foreign relations are "largely immune from judicial inquiry or interference"). If the Court considers entertaining the motion, it may wish to invite the views of the United States. *See* 28 U.S.C. § 517 (authorizing the Attorney General to attend to the interests of the United States in any pending suit).

**Any Determination Of Ownership Must Await Notice To The Owners.** Plaintiffs' proposed order of attachment would ask the Court to determine that the blocked funds are Venezuela's attachable property, through PDVSA (ECF No. 110 at 4), even as Plaintiffs attempt to reserve "adverse claim" and "priority" issues for later. The Court should not make that threshold ownership determination in the absence of the owners JPMCB will identify (whoever they might be). Any such determination must await notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also Jones v. Flowers*, 547 U.S. 220, 226 (2006) (reaffirming that standard).

**The Proposed Schedule.** If the Court permits the motion to proceed, the Republic requests a reasonable, non-expedited schedule. Plaintiffs face no imminent threat of a "loss of a right" (ECF No. 110 at 1) because, as shown above, any attachment would take effect only upon an OFAC license that has not issued and that Plaintiffs have not sought. (*See* ECF No. 103 at 24 ("Execution would require OFAC approval, which has not been granted").) The motion raises complex questions, briefing would fall over the Thanksgiving holiday, and the Republic, like Plaintiffs, is an international client that must coordinate with U.S. counsel. The Republic therefore requests that its opposition be due 30 days after service of Plaintiffs' motion, with any reply 14 days thereafter. That request is modest given Plaintiffs' eight extensions of their deadline to move for default judgment, several premised on "the upcoming holidays and needed coordination between counsel and Plaintiffs, who are international clients." (ECF No. 63 at 1; *see* ECF No. 107 at 1-2.)

For these reasons, the Republic respectfully requests that the Court (i) deny leave to file the proposed motion and grant the stay requested in ECF No. 100; or, in the alternative, (ii) before any briefing, direct Plaintiffs to serve PDVSA under 28 U.S.C. § 1608(b) and to give notice to the persons JPMCB identifies as owners, (iii) set the Republic's opposition deadline at 30 days after service of the motion, with any reply due 14 days thereafter, and (iv) decline to enter any interim directive to JPMCB, including the proposed advance-notice requirement.

Respectfully submitted,

_/s/ Hal S. Shaftel_
Hal S. Shaftel

cc: All Counsel of Record (by ECF)